OPINION OF THE COURT
Per Curiam.
After a jury trial defendant was convicted of criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third and seventh degrees. The Appellate Division unanimously affirmed the conviction. Defendant argues on this appeal that the trial court erred in denying his motions for a mistrial, and later to set aside the verdict, on the grounds that one juror was "grossly unqualified” within the meaning of CPL 270.35, and that he was denied a fair trial under the Federal and State Constitutions. We now reverse the order of the Appellate Division, and hold that when, during a break in deliberations, the juror stated to the Trial Judge that the juror’s bias against dark-skinned Hispanics was affecting her ability to make a decision on guilt or innocence, under the particular facts of this case and after a hearing on the issue the Judge should have determined that the juror was "grossly unqualified to serve.”
During the trial, one juror became ill and was replaced with an alternate juror. Another juror became ill during deliberations and, with defendant’s consent, was replaced by the one remaining alternate juror. Deliberations then continued.
Shortly thereafter, the jury informed the court officers that the jury was deadlocked, and the court officers instructed them to send the Judge a note. The Trial Judge then received a note stating only that a third juror wished to be excused. This juror was brought into the courtroom and, in the presence of counsel and defendant, explained that she wished to be excused "because of the emotional factors,” and stated that "I cannot make a decision. I can’t go guilty or not guilty.” When the Trial Judge asked for the reasons for the juror’s indecision, this exchange took place:
"juror no. five: First of all, on Thursday morning on the subway I was * * * bothered, touched, handled by a dark Hispanic man on the subway. And I am holding that against this defendant. And I don’t think it’s fair for me to make a *217 decision. I mean, I can’t. It’s something that happened to me after I had been on the jury. I can’t disassociate it.
"the court: And you’re condemning the whole Hispanic race because a Hispanic touched you on the subway?
"juror no. five: At the moment, yes, sir, I am.”
The juror then also stated that she was troubled by what she felt to be the "manipulation” of a prosecution witness by defense counsel.
Focusing on the subway incident, the Trial Judge asked the juror to recognize what happened to her as an insult to her dignity and not as a racial incident, and to disassociate it from her decision on the guilt or innocence of defendant on the facts. The Trial Judge then explained:
"the court: You recognize that if you’re excused there’s a mistrial.
"juror no. five: I cannot make — because of the emotional factors, I cannot a decision. I can’t make a decision. I can’t go guilty or not guilty.
"the court: And you recognize the — after almost two days of deliberating all this goes down the drain.
"juror no. five: Well, yes, your Honor, I am aware of that, but I cannot—
"the court: I have no more alternates.
"juror no. five: Yes, I’m very much aware of that. But I can’t make a decision. I mean, because of emotional problems.”
Finally, the Trial Judge made one last effort to convince the juror that she should return to deliberations:
"the court: I ask you to try because the stakes are so high to abort the trial at this moment. It would be such — it would be an awesome thing to do to the defendant, number one, to go through the whole process again. It would be cruel.
"juror no. five: But I’m not sympathetic at the moment. It’s my opinion.
"the court: That’s just number one. New York State is bottled up with trials. They’re all waiting. Many lawyers are coming in and out. I couldn’t move for days because of this trial. They’re all bottled up.
"This thing has to go all over again. The pens are bottled up, all waiting to go to trial. All those things are at stake.” The Judge implied that, despite her bias, she was better than some of the other jurors:
*218 "the court: And you don’t think that you could go in there and listen to the arguments to your fellow jurors? See, because let me tell you something. You know, don’t kid yourself. You’re not the only one who’s got a fight going on. Some tell and some don’t. Some tell and some don’t.
* * *
"And only thing about you, you are strong enough to come forth and say, ’Hey, I feel this.’ Others will perhaps conceal and — or shame, perhaps, to reveal it. You are most honest.”
In response, the juror finally stated ”[w]ell, I’ll try. I’ll try ”.
The juror then returned to the jury room. Defense counsel moved for a mistrial, and the motion was denied. Defendant was convicted, and defense counsel moved to set aside the verdict. A hearing was held on this latter motion, at which time the juror stated that she had voted to convict the defendant solely on the facts, and that she had put her bias aside. The trial court then denied defendant’s motion to set aside the verdict.[1]
The constitutional right of a criminal defendant to a fair trial includes both the right to be tried by the jury in whose selection the defendant himself has participated, and the right to an impartial jury (see, NY Const, art I, §§ 6, 2; US Const 6th, 14th Amends; People v Buford, 69 NY2d 290, 298; People v Torpey, 63 NY2d 361, 365). To safeguard these rights the New York Legislature has provided for the defendant and the People to participate fully in the selection of the jury (CPL 270.05-270.25; see also, Batson v Kentucky, 476 US 79; People v Scott, 70 NY2d 420). To further protect the impartiality of the jury, the Legislature also has supplied a mechanism for a juror to be dismissed during the trial or during deliberations (CPL 270.35).
Specifically, CPL 270.35 states that if after the jury is sworn but before it renders a verdict the court finds that a juror is *219 "grossly unqualified to serve”, that juror must be dismissed (see, People v Buford, 69 NY2d 290, 298, supra). Under that section, upon dismissal of a juror a mistrial must be declared if an alternate juror is not available. The Trial Judge generally is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35, because that Judge is in the best position to assess partiality in an allegedly biased juror (see, People v Michael, 48 NY2d 1, 10).
Recently, in People v Buford (supra), in the context of the discharge of a sitting juror over defendant’s objection, we set out guidelines for the trial court in making a determination under CPL 270.35. There we explained that the trial court should first conduct an in camera proceeding in the presence of the attorneys and defendant, with the attorneys participating if they so desire. We noted that this proceeding should be a "probing and tactful inquiry” into the "unique facts” of each case, including a careful consideration of the juror’s "answers and demeanor” (id., at 299).
We then held that a juror is grossly unqualified "only 'when it becomes obvious that [the] particular juror possesses a state of mind which would prevent the rendering of an impartial verdict’ ” (id., at 298, quoting People v West, 92 AD2d 620, 622 [Mahoney, P. J., dissenting], revd on dissenting opn below 62 NY2d 708; see also, People v Anderson, 70 NY2d 729, following People v Buford, supra; People v Cargill, 70 NY2d 687, 688, following People v Buford, supra). Thus in People v Buford (supra) we concluded that it was error for the trial court to have dismissed a sworn juror based on speculation from the juror’s equivocal responses (id.).
The case before us, however, is distinguishable from People v Buford (supra) in several important aspects. First, in determining that the jurors, in both People v Buford (supra) and its companion case, People v Smitherman, should not have been discharged as "grossly unqualified” under CPL 270.35 over defendants’ objections, we noted that the matters troubling the jurors were relatively insignificant[2] and unlikely to affect their deliberations; and that, after the court explained that *220 the jurors’ concerns were groundless, the jurors gave unambiguous assurances that they understood this and could deliberate fairly. Additionally, it is noteworthy that in Buford and Smitherman the prosecution sought discharge of a juror over defendant’s opposition, thus implicating defendant’s constitutional rights "to a trial by a 'particular jury chosen according to law, in whose selection [the defendant] has had a voice’ ” (People v Buford, supra, at 297-298, quoting People v Ivery, 96 AD2d 712, and People v West, 92 AD2d 620, 622 [Mahoney, P. J., dissenting], revd on dissenting opn below 62 NY2d 708, supra; see, NY Const, art I, § 2).
In contrast to the situation found in Buford and Smitherman, where minor incidents were involved and the question of the presence of bias was unclear at best, in the case before us the juror stated unequivocally that she was racially biased against Hispanics and was holding this against the Hispanic defendant. Thus, here we are not presented with equivocal indications of bias as we were in Buford and Smitherman; on the contrary, here the juror forthrightly expressed racial bias. Moreover, unsurprisingly, here it was the defendant who sought discharge of the juror in order to protect his right to be tried by an impartial jury.
We cannot accept the juror’s indications that she knew her bias was wrong, and her statement that she would "try” and deliberate as adequate assurances that the juror would put her bias aside and decide the case solely on the evidence. The construction of CPL 270.35 which affords the necessary constitutional protection is this: where, during the course of a trial, the court learns that a juror is racially or otherwise invidiously biased against the defendant due to an incident occurring after voir dire, the juror must be discharged as "grossly unqualified” unless (1) the trial court makes a determination on the record, following a probing and tactful inquiry with the juror, that the juror can render an impartial verdict according to the evidence and that her verdict will not be influenced by such bias; and (2) the trial court’s determination is supported in the record by the juror’s answers to the court’s questions including unequivocal assurance from the juror that he or she will decide the case solely on the evidence and free from any effect of the bias.
This case is not one in which the trial court was forced to "speculate as to possible partiality of the juror based on * * * equivocal responses” (see, People v Buford, supra, at 299). *221 Instead, on this record the juror’s statements made it plain that she " 'possessed] a state of mind which would prevent the rendering of an impartial verdict’ ” (see, id., at 298). Despite the trial court’s inquiry, however, the juror gave no assurance that she would or could put her bias aside and reach a determination solely on the facts presented at trial. This juror should, therefore, have been dismissed as grossly unqualified to serve under CPL 270.35.
Finally, it is important to note that this court has repeatedly held that when a jury is deadlocked it is impermissible for the trial court to single out a particular juror when further instructing the jury (see, e.g., People v Carter, 40 NY2d 933; People v Pagan, 45 NY2d 725). Therefore, it was error for the trial court in the case before us to overemphasize to the one juror the fact that if her request to be dismissed was granted a costly mistrial, unfair to defendant and others, would be required.
Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in Per Curiam opinion.
Order reversed, etc.

. [2] Because we hold that the juror should have been determined to be "grossly unqualified to serve” after the discussion with the trial court during deliberations, we do not reach any question as to the propriety of the postverdict hearing. We note, however, that while the trial court has discretion to order a postverdict hearing on the presence of juror bias or misconduct and its affect on the jury’s decision, the required assiduous protection of the secrecy and sanctity of the jury’s deliberative process counsels that such a hearing not be undertaken except in extraordinary circumstances.

. The jurors had expressed some concern over rather trivial matters — a juror in Buford seeing two prosecution witnesses leaving the courthouse together and wondering whether this was proper; another juror in Smitherman realizing that she had some knowledge of a collateral fact alluded to by a witness.