Egan Jr., J.
Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered March 3, 2011, upon a verdict convicting defendant of the crimes of assault in the first degree, criminal possession of a controlled substance in the seventh degree and making a punishable false written statement, and the violation of unlawful possession of marihuana (two counts).
On the evening of December 10, 2009, defendant, his girlfriend, Sharon Capone, and her cousin were at defendant’s residence in the City of Saratoga Springs, Saratoga County when Jerson Vargas and his girlfriend, among others, stopped by to see Capone’s cousin. While there, everyone present used some *798 form of illegal drugs (cocaine, crack cocaine or marihuana), and Vargas and defendant purportedly struck a deal whereby Vargas and his girlfriend would be allowed to do a few loads of laundry and “chill [t]here for the night” in exchange for Vargas furnishing an additional quantity of drugs. Somewhere around the third load of laundry, Capone decided that it was time for Vargas and his girlfriend to leave and enlisted defendant’s help in this regard. A “shouting match” ensued between Vargas and defendant in defendant’s bedroom, during the course of which defendant shot Vargas in the leg with a .30-30 caliber rifle. Defendant then drove Vargas to Saratoga Hospital, where Vargas, who was on parole at the time, falsely reported that he had been shot by an unknown assailant in the City of Schenectady, Schenectady County.
Defendant thereafter was indicted and charged with assault in the first degree, assault in the second degree (two counts), menacing in the second degree (two counts), criminally using drug paraphernalia in the second degree, criminal possession of a controlled substance in the seventh degree, making a punishable false written statement and unlawful possession of marihuana (two counts). Following a jury trial, defendant was convicted of assault in the first degree, criminal possession of a controlled substance in the seventh degree, making a punishable false written statement and unlawful possession of marihuana (two counts) and thereafter was sentenced to, among other things, 772 years in prison for the assault conviction. This appeal by defendant ensued.
Of the various arguments advanced by defendant, only two warrant discussion — specifically, County Court’s response to the jury’s request for “a copy of the charges and [the] law” and County Court’s subsequent response to the jury’s request for a read back of Vargas’s testimony regarding the confrontation with defendant. As the procedures employed by County Court in each of these situations deprived defendant of a fair trial, we reverse defendant’s conviction and remit this matter for further proceedings.
At the conclusion of its oral charge, County Court inquired of counsel as to whether there was any objection to providing the jury with a written copy of that portion of the charge defining the elements of the crimes at issue and the defense of justification (compare People v Townsend, 94 AD3d 1330, 1331 [2012], lv denied 19 NY3d 1105 [2012]). Defense counsel raised no objection in this regard {compare People v Owens, 69 NY2d 585, 589-591 [1987]), and County Court thereafter provided the jury with that portion of its charge in writing. After the jury commenced *799 deliberations, it sent a note to County Court setting forth a number of requests, including “a copy of the charges and law,” in response to which County Court summarily indicated— without further inquiry or elaboration — that such materials already had been provided.
As it was unclear from the jury’s note whether the jury simply was seeking the portion of the written charge previously promised by County Court or some other unidentified portion of the charge (or even the charge in its entirety), it was incumbent upon County Court to explore this inquiry with the jury and clarify the nature of the jury’s request or, at the very least, ascertain whether its response to the jury’s request was satisfactory. None of those measures was undertaken here, and “County Court’s perfunctory response[ ] to the [jury’s request] can hardly be said to have been meaningful” (People v Pyne, 223 AD2d 910, 912 [1996], lv denied 88 NY2d 940 [1996]). Although defense counsel did not object to the manner in which County Court responded to the jury’s inquiry, County Court failed “to provide a meaningful response to the jury” and, in so doing, failed to fulfill its “core responsibility” in this regard (People v Kisoon, 8 NY3d 129, 134, 135 [2007]). Accordingly, no objection was required to preserve this issue for appellate review (see People v Woodrow, 89 AD3d 1158, 1159 [2011], lv denied 19 NY3d 978 [2012]).
Further, even assuming that the procedure followed by County Court with respect to the jury note did not constitute reversible error, we nonetheless would conclude that a separate, independent basis for reversal exists here — namely, the procedure employed by County Court in responding to the jury’s request for a read back of Vargas’s testimony regarding “the confrontation with [defendant] in the bedroom” of defendant’s residence. Although CPL 310.30 affords a trial court a certain degree of latitude in responding to a jury request for additional information, the court’s response must be meaningful (see People v Wilson, 90 AD3d 1155, 1156 [2011], lv denied 18 NY3d 963 [2012]; People v Faulkner, 195 AD2d 384, 385 [1993]).* Additionally, “[a] request for a reading of testimony generally is presumed to include cross-examination which impeaches the testimony to be read back, and any such testimony should be read to the jury unless the jury indicates otherwise” (People v Jones, 297 AD2d 256, 257 [2002] [citation omitted], lv denied 98 *800 NY2d 769 [2002]; see People v Faulkner, 195 AD2d at 385; People v Berger, 188 AD2d 1073, 1074 [1992], lv denied 81 NY2d 881 [1993]).
Here, County Court directed the stenographer to read back only that portion of Vargas’s direct examination testimony that described the confrontation with defendant in the bedroom. Defense counsel strenuously objected, asserting that the jury should hear Vargas’s testimony in its entirety. Although the jury’s inquiry did not require a reading of Vargas’s testimony from start to finish, we nonetheless are persuaded that the read back procedures employed here “seriously prejudiced . . . defendant and constituted reversible error” (People v Smith, 68 AD3d 1021, 1022 [2009]; see People v Lourido, 70 NY2d 428, 435 [1987]). Despite the stenographer’s best efforts, our review of the record reveals that the jury was not in fact provided with all of Vargas’s testimony on direct examination relative to the confrontation in the bedroom, nor was it provided with any of the testimony elicited from Vargas in this regard on cross-examination. Additionally, even accepting the People’s assertion that Vargas’s testimony on cross-examination did not directly impeach his prior testimony with respect to the confrontation at issue, attacking Vargas’s credibility in general — and, in so doing, calling into doubt his version of the altercation with defendant — was both a viable strategy and potentially fertile ground for the defense. Vargas, by his own admission, had multiple criminal convictions and was out on parole at the time of the underlying incident — all of which prompted him to concoct a story designed to explain the shooting while deflecting attention away from the drugs-for-laundry deal he had struck with defendant. Under these circumstances, County Court’s decision to limit the requested read back to only those portions of Vargas’s testimony elicited on direct examination seriously prejudiced defendant and deprived him of a fair trial (see People v Smith, 68 AD3d at 1022; People v Lewis, 262 AD2d 584, 584 [1999]; compare People v Alter, 33 AD3d 621, 622 [2006], lv dismissed 8 NY3d 918 [2007]; People v Jones, 297 AD2d at 257) — particularly given that the jury was not asked whether (nor did it otherwise indicate that) it was satisfied with County Court’s response to its inquiry (compare People v Coleman, 32 AD3d 1239, 1240 [2006], lv denied 8 NY3d 844 [2007]; People v McDermott, 185 AD2d 384, 386 [1992], lv denied 80 NY2d 906 [1992]). Notably, County Court’s error in this regard was exacerbated when the jury requested a similar read back of the testimony offered by two other witnesses, and the court — correctly—permitted the jury to hear at least a portion of the testimony provided by such witnesses on cross-examination.
*801 We therefore conclude that the foregoing errors — individually and cumulatively — deprived defendant of a fair trial. Accordingly, the judgment of conviction is reversed, and this matter is remitted for a new trial. Defendant’s remaining contentions, including his assertion that the verdict is against the weight of the evidence, have been examined and found to be lacking in merit.
Lahtinen, J.P., Spain and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Saratoga County for a new trial.

 “In interpreting the adequacy of the court’s response, we consider the form of the question, the particular issue raised, the supplemental instruction actually given and the prejudice, if any, to the defendant” (People v Wilson, 90 AD3d at 1156-1157 [citation omitted]).