■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ZAIRE PAIGE, Appellant. [22 NYS3d 220]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Del Guidice, J.), rendered January 24, 2011, convicting him of murder in the second degree, assault in the first degree (three counts), assault in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was charged with, inter alia, murder in the second degree, assault in the first degree (three counts), assault in the second degree (four counts), and criminal possession of a weapon in the second degree (two counts). The People alleged that the defendant and his codefendant, Robert Crawford, acting in concert, shot and killed Lethania Garcia because they believed Garcia had killed one of their friends two years earlier.

At the defendant's jury trial, the People presented evidence that on October 27, 2008, the defendant and Crawford located Garcia in downtown Brooklyn. The People's evidence showed that the defendant and Crawford, each armed with a handgun, began shooting at Garcia while he stood on the sidewalk in front of a bakery. When the shooting began, Garcia fled into a nearby hair salon and the two gunmen followed him inside. Garcia attempted to escape out a back door, but the door was jammed. Witnesses inside the hair salon testified that everyone in the salon got down on the floor to escape the hail of bullets that flew around them. Testimony showed that one of the two gunmen stood at the door of the salon while the other gunman stood over Garcia and fired eight shots into him as he lay on the floor. Garcia sustained gunshot wounds that went through his brain, spinal cord, liver, and a lung. These injuries were fatal, and Garcia was pronounced dead at the scene. In addition to Garcia, the gunfire also struck numerous other individuals who had sought refuge in the hair salon and who had been crowded onto the floor when the shooting occurred, including a woman who sustained a total of 17 gunshot wounds and an off-duty police officer who was shot in the foot.

The defendant and Crawford fled the scene in a sport utility vehicle driven by an accomplice. At the trial, the accomplice testified pursuant to a plea agreement. His testimony provided the jury with a detailed account of the events leading up to,

and occurring after, Garcia's murder. The accomplice's testimony was the primary evidence identifying the defendant and Crawford as the perpetrators of these crimes, although mobile phone records and cell tower data were evidence of the defendant's presence at the location of the crime when the shooting occurred and other evidence corroborated the accomplice's account of the incident.

During the course of the trial, the defendant was excluded from the courtroom after he began shouting expletives at a police witness who was testifying on behalf of the People. The defendant repeatedly accused the police witness of "lying" before court officers removed him. This outburst occurred in the presence of the jury. After the court issued a curative instruction and warned the jurors not to discuss the case or begin deliberations until they were so charged, the jurors were excused for the day.

The court later learned that members of the jury had a discussion in the jury room regarding the credibility of police officers following the defendant's outburst. One member of the jury had reportedly stated that "she hated police officers" and that "none of them [could] be trusted." This juror—juror number eight—reportedly stated that she hid her negative views during jury selection because she "didn't want to bring any attention to herself." The court proceeded to individually interview each of the jurors and each of the alternate jurors in the presence of the prosecutor and defense counsel, questioning them about the contents of the discussion that had occurred in the jury room and whether they could remain fair and impartial. At the conclusion of this inquiry, the court dismissed two jurors—juror number eight and juror number nine. The court determined that juror number eight was grossly unqualified to serve and that she had engaged in substantial misconduct. The court dismissed juror number nine on the ground that she had engaged in substantial misconduct. The discharged jurors were replaced with alternate jurors and the trial resumed.

At the conclusion of the evidence and after summations, the jury was charged and retired to deliberate. The jury returned a verdict finding the defendant guilty of murder in the second degree, assault in the first degree (three counts), assault in the second degree, and criminal possession of a weapon in the second degree. The defendant appeared at sentencing and was permitted to address the court, at which time he maintained his innocence and directed obscenities at the Trial Justice. Noting that the defendant had "turned the streets of Brooklyn into

a war zone" and had callously "executed" Garcia and "grievously wounded . . . additional innocent bystanders," the court imposed a sentence of imprisonment. We affirm.

On appeal, the defendant contends that the evidence was legally insufficient to support the convictions since they were based solely on the uncorroborated testimony of the accomplice in violation of Criminal Procedure Law § 60.22 (1). This contention is without merit.

Criminal Procedure Law § 60.22 (1) provides that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). "[T]he role of the additional evidence is only to connect the defendant with the commission of the crime, not to prove that he committed it" (*People v Reome*, 15 NY3d 188, 192 [2010] [internal quotation marks omitted]; *see People v Sage*, 23 NY3d 16, 27 [2014]; *People v Breland*, 83 NY2d 286, 294 [1994]). The statutory corroboration requirement may be satisfied by evidence that " 'tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth' " (*People v Reome*, 15 NY3d at 192, quoting *People v Dixon*, 231 NY 111, 116 [1921]; *see People v Sage*, 23 NY3d at 27).

Here, contrary to the defendant's assertion, there was ample corroborative evidence tending to connect the defendant to these crimes. Numerous eyewitnesses testified that two shooters had been involved in the incident. One eyewitness observed the two shooters enter a sport utility vehicle after the shooting, and that witness wrote down the license plate number of the vehicle. The license plate number of the sport utility vehicle led police to the accomplice. In addition, although none of the eyewitnesses to the shooting identified the defendant as the shooter, the phone records and testimony from employees of the cell phone providers served to establish the defendant's presence at the scene when the crime was committed (*see* CPL 60.22 [1]; *People v Vantassel*, 95 AD3d 907, 907-908 [2012]; *People v Sudhan*, 83 AD3d 874, 874 [2011]). The accomplice's assertion that the defendant killed Garcia because the defendant believed that Garcia had killed the defendant's friend two years earlier was corroborated by Kim Tillson, the mother of the defendant's deceased friend, who testified that the defendant called her on the date of the shooting to wish her happy birthday and to inform her that he "took care of that." Accordingly, the defendant's contention that the evidence was legally insufficient to support his convictions is without merit.

Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (see CPL 470.15 [5]).

The defendant also contends that he was deprived of his right to be present at his trial when the court permanently excluded him from the courtroom following his outburst. This contention is without merit.

A defendant's right to be present at a criminal trial is encompassed within the confrontation clauses of the state and federal constitutions (see NY Const, art I, § 6; US Const 6th Amend). "Of course the right to be present may, as a general matter, be waived under both Constitutions" (People v Parker, 57 NY2d 136, 139 [1982]). "[A] waiver of the right to be present at a criminal trial may be inferred from certain conduct engaged in by the defendant after the trial has commenced" (id. at 139; see People v Johnson, 37 NY2d 778, 779 [1975]; People v Epps, 37 NY2d 343, 350-351 [1975]). "[A] defendant who engages in disruptive behavior during a trial may be held to have, in effect, waived his [or her] right to be present" (People v Connor, 137 AD2d 546, 549 [1988]; see Illinois v Allen, 397 US 337, 342 [1970]; People v Byrnes, 33 NY2d 343, 349 [1974]).

In this case, the defendant's actions throughout the course of the trial constituted disruptive conduct warranting the defendant's exclusion from the courtroom (see People v Byrnes, 33 NY2d at 349-350; People v Palermo, 32 NY2d 222, 225 [1973]; People v Baxter, 102 AD3d 805, 805 [2013]; People v Garcia, 57 AD3d 918, 918-919 [2008]; People v Felix, 2 AD3d 535, 536 [2003]). The record reflects that, even prior to the defendant's outburst, he had engaged in a pattern of behavior that delayed and frustrated court proceedings notwithstanding the fact that he had been repeatedly warned by the trial court that if he did not desist in such conduct, he would be barred from attending the remainder of the trial. To the extent that the defendant disputes the trial court's characterization of these events with reference to matter dehors the record, such contentions are not properly before this Court (see generally People v Cass, 18 NY3d 553, 556 [2012]). In sum, the record adequately demonstrates that the defendant, in persisting in his pattern of behavior despite the trial court's admonitions, knowingly, voluntarily, and intelligently waived his right to be present at the remainder of his trial (see People v Johnson, 37 NY2d at 779; People v Epps, 37 NY2d at 350-351; People v Byrnes, 33 NY2d at 349-350; People v Palermo, 32 NY2d at 225; see also People v Baxter, 102 AD3d at 805; People v Garcia, 57 AD3d at 918-919).

Furthermore, under the circumstances of this case, the trial

court did not improvidently exercise its discretion in refusing defense counsel's request to readmit the defendant to the courtroom (*see Illinois v Allen*, 397 US at 342-343; *People v Epps*, 37 NY2d at 351; *People v Menner*, 2 AD3d 650, 651 [2003]). Although a court should strive, "once the goal of preserving order and decorum is achieved, [to make] every reasonable effort . . . to minimize the possibility of prejudice" to a defendant (*People v Palermo*, 32 NY2d at 226), the record in this case does not support the defendant's contention that, after he was removed from the courtroom for his profanity-ridden outburst, he was willing to "conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings" (*Illinois v Allen*, 397 US at 343; *see People v Menner*, 2 AD3d at 651). Furthermore, while a trial court that readily possesses the means to do so should generally permit a defendant who has been excluded from the courtroom to observe the proceedings from a remote location in order to minimize the possibly of prejudice (*see generally People v Palermo*, 32 NY2d at 226; *People v Sanchez*, 7 AD3d 645, 646 [2004]; *People v Harris*, 115 AD2d 619, 620 [1985]), we conclude that under the particular circumstances of this case, the court did not improvidently exercise its discretion in declining defense counsel's request to permit the defendant to view the proceedings from a remote location (*cf. People v Sanchez*, 7 AD3d at 646; *People v Harris*, 115 AD2d at 620).

The defendant next contends that the trial court erred in dismissing juror number eight and juror number nine on the ground that they were grossly unqualified and/or had engaged in substantial misconduct. This contention is partially unpreserved for appellate review and, in any event, without merit.

"The constitutional right of a criminal defendant to a fair trial includes both the right to be tried by the jury in whose selection the defendant himself has participated, and the right to an impartial jury" (*People v Rodriguez*, 71 NY2d 214, 218 [1988]; *see* NY Const, art I, §§ 6, 2; US Const 6th, 14th Amends). In order to safeguard these rights, the Legislature has supplied, inter alia, a mechanism to allow for a juror to be dismissed during the trial or during deliberations (*see* CPL 270.35; *People v Rodriguez*, 71 NY2d at 218). Accordingly, "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature . . . the court *must* discharge such juror" (CPL 270.35 [1] [emphasis added]; *see People v Buford*, 69 NY2d 290, 298 [1987]).

Here, the defendant contends that the trial court erred in concluding that juror number eight was grossly unqualified in light of her unequivocal assurance that she could remain fair and impartial. The Court of Appeals has held that a juror is grossly unqualified "only when it becomes obvious that [the] particular juror possesses a state of mind which would prevent the rendering of an impartial verdict" (*People v Buford*, 69 NY2d at 298 [internal quotation marks omitted]; *see People v Rodriguez*, 71 NY2d at 219). In order to determine whether this standard has been met, "[a] trial court should first conduct an in camera proceeding in the presence of the attorneys and defendant" (*People v Rodriguez*, 71 NY2d at 219). This proceeding should be a "probing and tactful inquiry" into the "unique facts" of each case, including a careful consideration of the juror's "answers and demeanor" (*People v Buford*, 69 NY2d at 299; *see People v Rodriguez*, 71 NY2d at 219). "The Trial Judge generally is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35, because that Judge is in the best position to assess partiality in an allegedly biased juror" (*People v Rodriguez*, 71 NY2d at 219; *see People v Guy*, 93 AD3d 877, 878 [2012]; *People v Rosado*, 53 AD3d 455, 457 [2008]; *People v Franklin*, 7 AD3d 966, 967 [2004]; *People v Burse*, 299 AD2d 911, 912 [2002]; *People v Bamfield*, 208 AD2d 853, 854 [1994]).

In this case, the trial court properly conducted an in camera proceeding to inquire into the nature of the statements that juror number eight had made to other jurors regarding her views on law enforcement personnel. During this inquiry, juror number eight admitted that she had stated, during a discussion with other jurors, that "cops are crooked." Although juror number eight later asserted that she had only said that "some cops are crooked" and represented that she could be fair and impartial despite her "personal opinion" as to law enforcement personnel, the trial court was not required to accept these representations at face value (*see People v Rojas*, 15 AD3d 211, 212 [2005]; *People v Aybinder*, 215 AD2d 181, 181 [1995]; *People v Cannady*, 138 AD2d 616, 616-617 [1988]; *see also People v Hicks*, 6 NY3d 737, 739 [2005]; *Mikel v Zon*, 2007 WL 9225080, *18, 2007 US Dist LEXIS 103479, *50 [WD NY, Mar. 5, 2007, No. 04-CV-6448 (CJS/VEB)]). Contrary to the defendant's contention, the court's decision to reject the representations of juror number eight as to her partiality was not based on impermissible speculation; it was supported by the record (*cf. People v Telehany*, 302 AD2d 927, 928 [2003]; *People v Velasquez*, 167 AD2d 364, 365 [1990]; *People v Garcia*, 153 AD2d 951, 953 [1989]). Indeed, two of the alternate jurors who

were interviewed by the trial court controverted the account of the discussion given by juror number eight and indicated that, in the jury room, she had expressed deep hostility against law enforcement personnel. Under the circumstances, we decline to disturb the trial court's credibility determination with respect to juror number eight (*cf. People v Johnson*, 245 AD2d 305, 305 [1997]). In light of this factual determination, we conclude that the trial court properly dismissed juror number eight inasmuch as the record established that she was "grossly unqualified to serve in the case" (CPL 270.35 [1]; *see People v Rojas*, 15 AD3d at 212; *People v Aybinder*, 215 AD2d at 181).

The defendant further contends that the trial court erred in dismissing juror number nine on the ground that she had engaged in substantial misconduct. However, the defendant did not take this position during the trial. Rather, the defendant's attorney merely argued that juror number nine was not grossly unqualified due to her alleged bias against police officers. Even after the trial court determined, on the record, that juror number nine had engaged in substantial misconduct, defense counsel failed to take exception to the court's ruling on this ground. Accordingly, the defendant's contention that the trial court erred in determining that juror number nine had engaged in substantial misconduct is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Jenkins*, 257 AD2d 666 [1999]; *see also People v Hicks*, 6 NY3d at 739; *People v Gonzalez*, 246 AD2d 554, 554 [1998]).

In any event, the record supports the trial court's conclusion that juror number nine had engaged in misconduct of a substantial nature warranting her dismissal pursuant to CPL 270.35 (1). When she was questioned by the court during its in camera inquiry, juror number nine indicated that she had discussed the trustworthiness of police officers with other jury members, telling them that "some [police officers] do things that are not right," and related instances in which she had observed police misconduct. In response to a question about what precipitated her remarks, juror number nine indicated that these discussions "pertain[ed] to what took place [in the courtroom]" on the previous Friday, the day on which the defendant had disrupted court proceedings by accusing a police witness of lying. The record demonstrates that juror number nine engaged in these discussions despite the fact that the trial court had repeatedly admonished the jury "[y]ou may not discuss any subject connected with this case among yourselves," and had repeated these warnings just prior to discharging the jury in the wake of the defendant's outburst. Although juror

number nine acknowledged receiving these instructions, she refused to acknowledge that she had violated them. In addition, the record reflects that she failed to adequately respond to questions during jury selection about her past experiences with law enforcement personnel despite the fact that the prospective jurors were asked whether they had any "personal experiences" that would "impact" how they would evaluate police testimony, and this and similar questions were specifically incorporated into the questions directed at juror number nine. In light of the foregoing, we decline to disturb the trial court's finding that juror number nine improperly withheld information from the court and the lawyers during voir dire and violated the court's repeated instructions not to discuss the case prior to formal deliberation. In light of this factual determination, we conclude that the trial court properly dismissed juror number nine inasmuch as the record demonstrated that she had "engaged in misconduct of a substantial nature" (CPL 270.35 [1]; *see People v Cannady*, 138 AD2d at 616-617; *see also People v Havner*, 19 AD3d 508, 508 [2005]; *People v Rojas*, 15 AD3d at 212; *People v Tamayo*, 256 AD2d 98, 99 [1998]; *People v Radtke*, 219 AD2d 739, 739-740 [1995]; *People v Johnson*, 217 AD2d 667, 668 [1995]; *People v Berrios*, 177 AD2d 493, 494 [1991]; *People v Fox*, 172 AD2d 218 [1991]).

The defendant also contends that he was denied his right to a public trial when the trial court closed the courtroom for the limited purpose of determining the extent to which defense counsel had "opened the door" to certain evidence. However, the defendant waived this claim by explicitly consenting to the closure (*see People v Bens*, 23 AD3d 489 [2005]; *People v Sevencan*, 258 AD2d 485 [1999]). The defendant's further contention that his limited waiver of this right was not knowing, voluntary, and intelligent is without merit (*see People v Moody*, 300 AD2d 510, 510-511 [2002]; *People v Roque*, 291 AD2d 417, 417 [2002]).

There is no merit to the defendant's contentions regarding the admission of evidence of the defendant's gang membership, as the evidence was relevant to the issue of the defendant's motive, was inextricably interwoven into the narrative, and explained the relationships between the parties (*see People v Bruno*, 127 AD3d 986 [2015]; *People v Harris*, 117 AD3d 847, 855 [2014], *affd* 26 NY3d 1 [2015]; *People v Borrero*, 79 AD3d 767, 768 [2010]; *People v Jordan*, 74 AD3d 986, 986 [2010]).

However, the trial court should not have permitted the elicitation of evidence that the defendant had a handcuff key in his possession at the time of his arrest, nor allowed Police

Officer Rashan LaCoste to testify that when he arrested the defendant on a previous occasion for crimes unrelated to the crimes charged in this case, various guns and ammunition were recovered from the residence where the defendant was located at the time of that arrest. However, these errors were harmless, as the proof of the defendant's guilt, without reference to the error, is overwhelming, and there is no significant probability that the jury would have acquitted the defendant had it not been for the error (*see People v Gillyard*, 13 NY3d 351, 356 [2009]; *People v Crimmins*, 36 NY2d 230, 241-242 [1975]). Similarly, any prejudice caused by the court's refusal to provide a curative instruction after permitting the People to add a witness after the parties' opening statements was not so great as to deprive the defendant of a fair trial.

Contrary to the defendant's further contention, the court's interpretation of a jury request for a readback was reasonable, and its response meaningful (*see* CPL 310.30; *People v Grant*, 127 AD3d 990, 991 [2015]; *People v Clark*, 108 AD3d 797 [2013]; *People v Briggs*, 61 AD3d 770, 771 [2009]; *People v Jones*, 297 AD2d 256, 257 [2002]).

Under the circumstances, the Supreme Court did not improvidently exercise its discretion in sentencing the defendant to the maximum aggregate sentence permitted (*see People v Suitte*, 90 AD2d 80 [1982]). Contrary to the defendant's further contention, the sentencing limitations provided in Penal Law § 70.30 (1) (e) do not apply where the two or more crimes include, as here, a class A felony (*see* Penal Law § 70.30 [1] [e] [iii]; *Matter of Roballo v Smith*, 63 NY2d 485 [1984]). Rivera, J.P., Balkin, Miller and Hinds-Radix, JJ., concur.