■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRELL SPENCER, Appellant. [24 NYS3d 48]—

Judgment, Supreme Court, Bronx County (William I. Mogulescu, J.), rendered July 18, 2013, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him to a term of 25 years, affirmed.

The court properly denied defendant's motion to suppress his statements as fruits of a warrantless home arrest based upon its finding that defendant voluntarily came out of his apartment. There is no basis for disturbing the court's credibility determinations. The hearing evidence established that there was no violation of *Payton v New York* (445 US 573 [1980]) because defendant knowingly and voluntarily presented himself for public view (*People v Ashcroft*, 33 AD3d 429, 429 [1st Dept 2006], *lv denied* 8 NY3d 843 [2007], *cert denied* 552 US 829 [2007]).

The court properly denied defendant's request for a jury instruction regarding intoxication. At trial, defendant maintained he had stabbed the victim out of self-defense. In the aftermath of the stabbing, he carried the victim to the tub, ran the shower to wash away the blood, tried to clean up the living room floor and walls, and sent his friend a text message, asking her to bring over plastic bags and cleaning supplies. Viewed as a whole and in a light most favorable to defendant, the evidence, which included, among other things, defendant's entirely purposeful behavior, provided no reasonable view that he was so intoxicated as to be unable to form the requisite intent (*see People v Beaty*, 22 NY3d 918, 921 [2013]).

The court properly denied defendant's application for a mistrial. On the fourth day of the deliberation, after counsel had agreed to excuse the alternate jurors, the court was notified that juror number one, the foreperson, had concerns. In the presence of both attorneys, the court conducted an in camera, individualized inquiry of the juror (*see People v Rodriguez*, 71 NY2d 214 [1988]). The juror said she could not "separate [her] emotions from the case" and although she had originally thought she could do that, was now unable to do so. The court reminded her that she had a duty to decide the case "on the evidence and the law as you find it to be" adding, that "I know it's difficult to be a juror but . . . we've all put [in] a lot of time, a lot of effort, and there's no way that we can go forward without you." When the juror asked the court, "So is it just that I make a decision based on my emotions, just to get it out of the way?" the court replied, "No, no I wouldn't ask you to make a decision based upon your emotions. . . " and urged her to "put aside, to the extent that you can, your emotion and make a decision. Speak to your fellow jurors; discuss with your fellow jurors; listen to your fellow jurors; express your own views to your fellow jurors; and then, eventually, come to a decision as to the one issue here . . . whether or not the People have proven Mr. Spencer's guilt beyond a reasonable doubt. I'm going to have to ask you to really try very hard to do that." When the juror told the court "I don't have it in me," the court reassured her "there is no new jury that's going to be any better doing this than you are" and stated: "THE COURT: Look if you think of the position that we're in now . . . I mean this is a significant case and everybody here has a real interest in it being resolved. Your fellow jurors have an interest in it being resolved; the People of the State have an interest of it being resolved, everybody does. And so I'm going to ask you to really do, you know, to decide the case. Figure out what you believe the facts are. And without fear or favor or bias or sympathy, once you decide the facts and apply the law, then you will decide whether or not Mr. Spencer is even [sic] guilty or not guilty."

The court then asked the juror whether she could decide what the facts are and she responded "yes." The court then asked whether she would apply the law as "I give it to you" and the juror replied that she would. The court then made the following statement and sent the juror back to join the other jurors: "THE COURT: I understand what you're saying. But you're capable of deciding, on your own, what the facts are. And once you do that, once you do that, then its your job to apply the law to the facts. And come to a decision based on the

law and the facts and that's what you promised to do. So I'm going to ask you to try to do that."

After juror number one had left the courtroom, defense counsel immediately moved for a mistrial, claiming that juror number one was grossly unqualified (CPL 270.35 [1]). The court, stating that it was "not prepared, at this time to grant a mistrial" denied the motion, but asked defense counsel, "[I]s there anything you feel I should ask her further?" to which defense counsel answered, "No." The trial court then offered to give the jurors an *Allen* charge, but both attorneys objected. The People's objection was on the basis that they had not asked for it, and defense counsel's objection was "You already said it." The court had all the jurors brought in and gave them the following additional instruction: "THE COURT: What I'm going to ask you to do is I'm going to ask you to continue to apply the law to the facts as you find the facts without fear or favor or bias or sympathy of any kind that's your job. An I'm going to ask you to do that. So I'm going to ask you to return to the jury room and resume your deliberations. And if something occurs to you that you think will be helpful, because that's what you promised to do and I'm going to really hold you to that promise. That you will decide this case on the facts as you find them; the law as I've told you; without fear or favor or sympathy or bias, okay."

Without prompting, juror number one responded, "I have no choice," and the court agreed: "That's true, okay, thank you very much." The jurors were sent back to deliberate. Outside the presence of the jurors, the court encouraged both sides to discuss the possibility of resolving the case with a plea. Later that afternoon, however, the jury notified the court it had reached a verdict.

After a juror is sworn in, the juror should be disqualified only "when it becomes obvious that [the] juror possesses a state of mind which would prevent the rendering of an impartial verdict" (CPL 270.35 [1]; *People v Buford*, 69 NY2d 290, 298 [1987]; *People v Watson*, 243 AD2d 426 [1st Dept 1997], *lv denied* 92 NY2d 863 [1998]). The trial court properly concluded, based upon its observations of the juror and its interactions with her, that she was not grossly unqualified from continuing to serve (CPL 270.35 [1]; *Buford*, 69 NY2d at 298). Contrary to how the dissent characterizes the trial court's interactions with the juror, the colloquy, consisting of some 10 transcribed pages, shows that the court patiently listened to the juror and tactfully asked her probing questions to determine whether, for some reason, she could not be impartial (*see*

*People v Sanchez,* 99 NY2d 622 [2003]). She was candid in her responses and forthright about her concerns. None of her concerns had to do with fear about her personal safety (*see People v Ward,* 129 AD3d 492, 493-494 [1st Dept 2015] [juror afraid of reprisal from defendant's accomplices], *lv denied* 26 NY3d 936 [2015]), nor did she express any concerns about feeling coerced by her fellow jurors to vote in any particular way (*see People v Alvarez,* 86 NY2d 761, 763 [1995]). The juror never expressed an inability to deliberate fairly and render an impartial verdict, nor did she make any statements that could be taken as evidence of bias or sympathy either towards the deceased or the defendant that would have prevented her from deciding defendant's guilt or innocence. The juror only said that she was having difficulty separating her emotions, not that she was incapable of deciding the facts or applying the law, or that she would disobey the court's instructions.

After the court listened to her concerns, and reassured her that she could do the job that she had taken an oath to do, the juror told the court that she could and would decide the facts and follow the court's instructions to reach a verdict (*see People v Parrilla,* 112 AD3d 517, 518 [1st Dept 2013], *lv granted* 26 NY3d 933 [2015]). Her comment that she had "no choice," in the overall context of the reassurances she gave to the trial court that she could decide the facts and would apply the law, was not a basis to disqualify her. Since the trial court personally observed her demeanor and gauged her responses to its inquiries, it was in the best position to ascertain her impartiality (*see People v Bamfield,* 208 AD2d 853, 854 [2d Dept 1994], *lv denied* 84 NY2d 1009 [1994]). That finding is accorded deference and we decline to disturb it.

Although the dissent notes that the trial court, in its individual inquiry, did not stress the importance of the juror reaching a verdict without surrendering her conscientious belief (*see People v Nunez,* 256 AD2d 192, 193 [1st Dept 1998], *lv denied* 93 NY2d 975 [1999], citing *People v Ali,* 65 AD2d 513 [1st Dept 1978], *affd* 47 NY2d 920 [1979]), that instruction had already been given to all the jurors when they were originally charged. Both attorneys objected to the court giving the jury an *Allen* charge, which would have, once again, stressed the importance of reaching a verdict without forcing any juror to surrender a conscientiously held belief (*Allen v United States,* 164 US 492 [1896]). When asked by the court whether he had any further questions for the juror, defense counsel responded he had none. Defense counsel did not object to any of the statements the trial court made to the juror during its inquiry of

her. The court's statements to the juror, urging her to continue deliberations with her fellow jurors, and to decide the facts and apply the law, as it was given to her, did not amount to coercion of a particular verdict (*see People v Pagan*, 45 NY2d 725 [1978]). The court properly exercised its discretion in declining to discharge the juror, a remedy that would have necessitated a mistrial since the alternative jurors had already been excused (*see* CPL 270.35 [1]; *Buford*, 69 NY2d at 299-300). The colloquy supports the conclusion that the juror could reach a fair and impartial verdict.

We perceive no basis for reducing the sentence. Concur—Saxe, Richter and Gische, JJ.

Tom, J.P., dissents in a memorandum as follows: Because the trial court failed to conduct a tactful and probing inquiry to ascertain whether a juror was capable of rendering an impartial verdict and because the court, in further instructing the jury, failed to emphasize the need to arrive at a verdict without requiring any single juror to surrender her conscientious belief, the record does not afford an adequate basis for this Court to conclude that the verdict was not the result of coercion, and a new trial is required.

On the morning of the fourth day of deliberations, after the alternate jurors had been discharged, the court received a message from juror number 1 stating that she wanted to be excused. The court conducted an inquiry into the juror's concerns in the courtroom in the presence of counsel and defendant (*see People v Buford*, 69 NY2d 290, 299 [1987]). The juror was able to say only, "I'm not sure that I'm able to separate my emotions from the case so I just wanted to—," when the court cut her off:

"THE COURT: Well, I mean, you have to do that. You have to separate your emotions. You're a member of a jury of 12 people. As I said, this has to be decided. And you promised you will be able to do so. It has to be decided on the evidence and the law as you find it to be. And I know it's difficult to be a juror but that's you know—I mean we've all put a lot of time, a lot of effort, and there's no way we can go forward without you.

"THE JUROR: Well, I do understand. I feel—I thought I would be able to but it is my duty to let you know that I haven't been able to.

"THE COURT: Well, I mean, it's something. We can't go forward and there's no way we can excuse you. We can't go forward without you, we just can't.

"THE JUROR: So is it just that I make a decision based on my emotions just to get it out of the way?"

The court responded that it would not ask the juror to make a decision based on her emotions, but asked that she attempt to put aside her emotions and make a decision. The juror responded, "I don't feel like I'm able to. I mean I've been trying extremely hard and I don't feel that I can without—I can't separate it I thought that I could." The court again directed the juror "to decide the facts . . . and apply the law as I have said it to you." To which the juror replied, "But that's what I have been trying to do and that's why I've come to [the] conclusion that I can't. I don't have it in me." The court again asked the juror to "try very hard" to continue engaging in deliberations with her fellow jurors. Again the juror responded, "I can't, I can't separate it anymore. Don't know, I don't know. I don't have the capabilities to. I've been trying and I can't. That's what I'm trying to tell you." Ignoring the juror's plea, the court once again told the juror to "go back over it with your fellow jurors and to try because that's your job," the following colloquy ensued:

"THE JUROR: I feel like I am. And I don't feel like I can do that that's what I feel. Like it's not like I came to this conclusion, I stepped in one minute and I came right back out. I feel like I've come and giving [sic] up my conscience. I did take an oath to do a certain job that I can't do it I can't.

"THE COURT: But you can decide what the facts are can't you?

"THE JUROR: Yes.

"THE COURT: And once you've done that, once you've decided the facts, then you have to apply the law as I [gave] it to you that you have to do."

When the juror said, "[A]ll right, I mean I'm telling"—the court abruptly cut short the juror's further attempt to explain her feelings with another instruction to "come to a decision based on the law and the facts," at which point defense counsel moved for a mistrial on the ground that "this juror is no longer qualified to be a juror in this case." The court immediately denied the application. When the jury returned to the courtroom, the court asked them collectively to apply the law to the facts and to continue deliberations "without fear or favor or sympathy or bias, okay." Juror number 1 responded, "I have no choice," and the court stated, "That's true, okay. Thank you very much."

After the jury left the courtroom to resume deliberations, the court expressed its belief to counsel that "the juror, at this stage, is the sole hold on [sic] in this case . . . but for whatever reason up to now feels, notwithstanding what she had sworn to

do, that she can't say guilty." The court urged defendant to accept an offer to enter a plea to manslaughter in the first degree and recessed the case for lunch to allow him to consider it. But when the jurors returned only a short while later at 2:30 p.m., they announced that they had reached a verdict, finding defendant guilty of first-degree manslaughter.

A defendant has the right to removal of a juror who is "grossly unqualified" to continue serving (CPL 270.35 [1]; *People v Rodriguez*, 71 NY2d 214, 218-219 [1988]). Disqualification requires a "tactful and probing inquiry" that convinces the court, based on the juror's unequivocal responses, of the "gross disqualification to serve impartially" (*People v Anderson*, 70 NY2d 729, 730 [1987]).

In the matter before us, the trial court's inquiry was neither particularly tactful nor probing. By cutting off the juror's attempt to explain the nature of her emotional conflict, the court neglected to investigate how her emotions might—or might not—interfere with her ability to render an impartial verdict (*id.*). Having rendered equivocal, by its interruptions, the juror's responses, there was little for the trial court to assess, resulting in an inadequate record for this Court to review. Like a trial court, we "may not speculate as to the possible partiality of a sworn juror based on equivocal responses" (*id.*). Furthermore, it is clear that the trial court failed to ascertain that the juror would not render a determination "based on my emotions just to get it out of the way" or by "giving up my conscience" or because "I have no choice." Finally, the court failed "to stress the importance of reaching a verdict without requiring that any juror surrender a conscientious belief" (*People v Nunez*, 256 AD2d 192, 193 [1st Dept 1998], *lv denied* 93 NY2d 975 [1999], citing *People v Ali*, 65 AD2d 513 [1st Dept 1978], *affd* 47 NY2d 920 [1979]).

Moreover, a review of the record makes clear that, like the court in *Rodriguez*, the trial court's predominant concern was not determining whether the juror was "grossly unqualified" but was to avoid declaring a mistrial at all costs. In *Rodriguez*, the trial court expressly informed the juror that her discharge would result in a mistrial, that there were no more alternates, and remarked that "after almost two days of deliberating all this goes down the drain" (71 NY2d at 217). Here, the court, faced with the same concern, repeatedly pressured the juror and ignored her concerns, stating that she had to continue, that "there's no way we can excuse you," confirming that she had "no choice," and noting the time and effort put into the case and how the defendant, the prosecution, and the other jurors had a "real interest in [the case] being resolved."

In addition, unlike the jurors in *People v Buford* and its companion case, *People v Smitherman*, who were concerned about relatively insignificant matters "unlikely to affect their deliberations" (*Rodriguez*, 71 NY2d at 219), the record here does not allow for such a conclusion. Indeed, while the trial court did not sufficiently probe the juror's emotional conflict, it is clear that, although the juror tried to separate her emotions for three days of deliberations, she felt compelled to advise the court that she was unable "to separate her emotions from the case" and could not do the job she took an oath to do without "giving up [her] conscience."

Nor did the juror here claim an ability to render an impartial verdict or state that she "could separate her own emotions and experience from the facts and the evidence in this case" (*cf. People v Dacus*, 215 AD2d 578, 579 [2d Dept 1995], *lv denied* 86 NY2d 793 [1995]).

Contrary to the majority's implication, it is not necessary for the juror to express concern for her personal safety or about feeling coerced by her fellow jurors in order for her to be found "grossly unqualified." Significantly, the juror stated that she could not render an impartial verdict, could not separate her emotions despite her best efforts, and did not want to make a decision "based on my emotions just to get it out of the way."

While defense counsel may not have objected to any of the statements the trial court made to the juror and did not propose further questions for the juror, it is ultimately the trial court's responsibility to conduct a sufficient inquiry to ensure the juror can serve impartially and without surrendering her conscientious belief. Nonetheless, after the court ended the colloquy with the jurors, counsel immediately moved for a mistrial on the ground she was no longer qualified to be a juror in this case.

The court's failure to conduct a sufficient inquiry is no better than a refusal to make any inquiry whatsoever. Indeed, in either case, the issue is "not whether the juror ultimately would or should have been discharged" (*People v McClenton*, 213 AD2d 1, 7 [1st Dept 1995], *lv granted* 86 NY2d 848 [1995], *appeal dismissed* 88 NY2d 872 [1996]). Rather, it is the failure of the court to fully explore whether the juror was unwilling or unable to separate her emotions from her task as a juror, and whether she would render a decision based on her emotions for expedience sake. Ultimately, this failure means we can not be certain that defendant was fairly convicted because it will never be known whether the conviction was obtained under "questionable circumstances which could have been easily clari-

fied had appropriate inquiry been timely made" (*id.* at 6; *see also People v Ventura*, 113 AD3d 443, 446 [1st Dept 2014], *lv denied* 22 NY3d 1203 [2014]).

The improper discharge of a sworn juror violates the right of a defendant to be judged by a jury in whose selection he has participated (*Rodriguez*, 71 NY2d at 218). By the same token, it is equally improper and prejudicial for a court to "attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict" (*People v Pagan*, 45 NY2d 725, 726 [1978], quoting *People v Faber*, 199 NY 256, 259 [1910]). The record here clearly supports the fact that the court coerced the juror, who may have surrendered her conscientious belief, to render a verdict. "The verdict of a juror should be free and untrammeled" (*Faber*, 199 NY at 259) and here, as in *Faber*, the court's instructions "may have resulted in an agreement by the jury where an agreement would not have been obtained if each juryman in obedience to his right and duty had decided the case upon his own opinion of the evidence and upon his own judgment" (*id.*).

Accordingly, the judgment of conviction should be reversed and the matter remanded for a new trial.