=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 20
The People &c.,
            Appellant,
        v.
David Rivera,
            Respondent.



            David P. Stromes, for appellant.
            Lloyd Epstein, for respondent.
            New York State Psychiatric Association et al., amici
curiae.




PIGOTT, J.:

            Defendant, while seeking treatment from a psychiatrist,
admitted to sexually abusing an 11-year-old relative.  The
psychiatrist notified the Administration for Children's Services
(ACS) of defendant's admission.  Subsequently, at defendant's
criminal trial, over defendant's objection, the trial court

- 1 -

permitted the psychiatrist to testify that defendant had made the admission.  The issue on this appeal is whether the trial court's ruling ran afoul of the physician-patient privilege (see CPLR 4504 [a]).  We hold that it did.

I.

On November 1, 2007, the child revealed to her pediatrician, in her mother's presence, that she had been sexually abused by defendant.  The pediatrician reported the abuse to ACS.  The child's mother relayed the accusation to defendant's mother, who told defendant of the child's accusation. Shortly after receiving word of the child's allegation, defendant was taken by ambulance to the psychiatric emergency room at Columbia Presbyterian Hospital (CPH), complaining of depression and suicidal ideation.  While being treated, defendant told his psychiatrist that he had sexually abused the child.

The following day, the child was medically examined at a Child Advocacy Center (CAC).  While there, she spoke with a detective, who, during a subsequent investigation, learned that defendant had been admitted to CPH.  The detective obtained a court order requiring CPH to notify the police upon defendant's release.  Four weeks later, following his discharge, defendant was arrested and charged with, among other things, predatory sexual assault against a child (Penal Law § 130.96).

Prior to trial, the People moved for the issuance of a subpoena duces tecum seeking defendant's psychological records

from CPH for in-camera review by the trial court.  Specifically, the People sought records that included any admission defendant may have made concerning the crimes charged in the indictment, which, they argued, could be released as either an exception to or waiver of the physician-patient privilege.  Defendant countered that the disclosure of the medical records and any testimony by the psychiatrist concerning defendant's treatment was barred by the physician-patient privilege pursuant to CPLR 4504 (a), and that defendant had not waived that privilege.

Following the in-camera review of the records, Supreme Court held that the admissions defendant made to his psychiatrist were privileged because they were made in the course of diagnosis and treatment of his condition.  However, the court, while refusing to allow "the full extent of defendant's admissions" to be used, held that, because the psychiatrist had disclosed the reported abuse to ACS, the fact that defendant had admitted to the abuse was admissible at trial.

At trial, the child testified concerning the abuse she sustained at the hands of defendant.  The People then called defendant's psychiatrist, who testified that defendant admitted to having sexually abused the child.  Defendant, testifying on his own behalf, denied committing any sexual abuse.  During summation, the People referred to the psychiatrist's testimony and, during deliberations, the jury requested a read-back of that testimony.  Defendant was convicted as charged and sentenced to a

term of 13 years to life in prison.

The Appellate Division unanimously reversed the judgment of Supreme Court and remanded for a new trial, holding that Supreme Court erred in permitting the psychiatrist to testify concerning defendant's admissions of sexual abuse and that the error was not harmless (99 AD3d 535, 535 [1st Dept 2012]).  A Judge of this Court granted the People leave to appeal and we now affirm.

## II.

The narrow issue on this appeal is whether the trial court erred in allowing defendant's psychiatrist to testify concerning defendant's admission that he abused the child.[1]  We hold that the trial court's ruling violated the physician-patient privilege.

CPLR 4504 (a) provides, as relevant to this appeal, that "[u]nless the patient waives the privilege, a person authorized to practice medicine . . . shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to

---

[1] We do not address the propriety of the Appellate Division's determination that "the psychiatrist made a proper disclosure of the abuse" (99 AD3d at 535), nor is it necessary for us to address whether this Court should adopt the so-called "Tarasoff doctrine" (see Tarasoff v Regents of Univ. of California, 17 Cal3d 425, 551 P2d 334 [1976]), which requires mental health professionals to disclose a patient's confidential information to third parties when the professional determines that the patient poses a "serious danger of violence to another" (17 Cal3d at 431, 551 P2d at 340).

enable him [or her] to act in that capacity."  The People do not argue that defendant waived the privilege, nor do they dispute that there was a "professional relationship" between defendant and his psychiatrist (see e.g. People v Sliney, 137 NY 570, 580 [1893]).  Nor do the People contend that the information conveyed by defendant to his psychiatrist was not necessary for his treatment (see People v Decina, 2 NY2d 133, 143 [1956]).  Rather, the People claim that, because defendant's admission related to the sexual abuse of a child, it was not privileged since defendant had no reason to believe that it would remain confidential (see generally id. at 145).

Regardless of whether a physician is required or permitted by law to report instances of abuse or threatened future harm to authorities, which may involve the disclosure of confidential information, it does not follow that such disclosure necessarily constitutes an abrogation of the evidentiary privilege a criminal defendant enjoys under CPLR 4504 (a). Whereas confidentiality is an ethical requirement of physicians "that is essential to psychiatric treatment . . . and is based in part on the special nature of psychiatric therapy as well as on the traditional ethical relationship between physician and patient" (The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry, Section 4, Annotation 1, at 6 [2013 ed]), the physician-patient privilege is a rule of evidence that protects communications and medical records (see

<u>Williams v Roosevelt Hosp</u>., 66 NY2d 391, 396 [1985]).  The
privilege serves several objectives:  it encourages unrestrained
communication between a patient and his or her medical provider
so that the patient may obtain diagnosis and treatment without
fear of embarrassment over potential disclosure; it encourages
physicians to be forthright in recording their patients'
confidential information; and it protects "patients' reasonable
privacy expectations against disclosure of sensitive personal
information" (<u>Matter of Grand Jury Investigation in N.Y. County</u>,
98 NY2d 525, 529-530 [2002] [citations omitted]).

        The People argue that because the Legislature has
carved out several exceptions to the physician-patient privilege,
defendant could not reasonably have expected his statements to
remain confidential in the context of a criminal proceeding.
Those exceptions, however, underscore that whenever the
Legislature has decided to limit the privilege's scope, it has
done so through the enactment of specific legislation to address
the particular subject matter (<u>see</u> <u>Matter of Grand Jury</u>
<u>Investigation of Onondaga County</u>, 59 NY2d 130, 136 [1983]).  If
the Legislature had, in fact, decided to create an additional
exception permitting a criminal defendant's mental health
professional to testify against the defendant in a criminal
proceeding, it would have done so.  Indeed, we have noted that,
given the number of statutory exceptions to the privilege, "the
legislative concept [is clear] that exceptions to the

statutorily-enacted physician-patient privilege are for the Legislature to declare" (<u>Matter of Grand Jury Investigation of Onondaga County</u>, 59 NY2d at 136), and we need look no further than section CPLR 4504 itself which contains those exceptions (<u>see</u> CPLR 4504 [b] [requiring certain physicians and other health professionals "to disclose information indicating that a patient who is under the age of sixteen years has been a victim of a crime"], [c] [requiring physicians and nurses "to disclose any information as to the mental or physical condition of a deceased patient privileged under subdivision (a)" in certain designated circumstances]).

When the Legislature has sought to either limit or abrogate the privilege beyond the confines of section 4504, it has been clear in its intent (<u>see</u> Social Services Law § 384-b [3] [h] [privilege not available in a proceeding seeking an order committing the guardianship and custody of a destitute or dependent child]; Social Services Law § 413 [identifying class of mandatory reporters of suspect child abuse and maltreatment]; Social Services Law § 415 [providing that reports of suspected child abuse or maltreatment must be made in writing and "shall be admissible in evidence in any proceedings relating to child abuse or maltreatment"]); Family Ct Act § 1046 [a] [vii] [stating that the privilege "shall (not) be a ground for excluding evidence which would otherwise be admissible" in abuse and neglect proceedings]; Mental Hygiene Law § 81.09 [d] [permitting a court

evaluator in guardianship proceedings to apply for permission to inspect medical and psychiatric records of the alleged incapacitated persons, and allowing the court to order such disclosure notwithstanding the physician-patient privilege]; Public Health Law § 3373 [stating that "for purposes of duties arising out of" article 33, relating to controlled substances, "no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient"]).

Although the Legislature may not always explicitly set forth its intention to limit or abrogate the privilege by expressly cross referencing CPLR 4504, its intent is evident from the directives of the particular statute (see Penal Law § 265.25 [requiring attending physicians to report to police every case of "any injury arising from or caused by the discharge of a gun or firearm" and "a wound which is likely to or may result in death and is actually or apparently inflicted by a knife, icepick or other sharp or pointed instrument"]; Penal Law § 265.26 [requiring physicians to report certain burn injuries to the office of fire prevention and control]; Public Health Law § 2101 [1] [requiring physicians to "immediately give notice of every case of communicable disease" to the proper authorities]).

We have acknowledged that although the physician-patient privilege is in derogation of the common law, it should

be afforded a "broad and liberal construction to carry out its policy" of encouraging full disclosure by patients so that they may secure treatment (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d at 134 [citation and internal quotations omitted]).  Conversely, exceptions that limit the privilege are afforded a narrow construction (see People v Sinski, 88 NY2d 487, 492 [1996]).  From these statutorily-enacted exceptions, it is evident that the Legislature has made considered judgments in deciding when the physician-patient privilege should give way to what it deems to be greater interests, namely, proceedings involving allegations of child abuse, maltreatment and neglect, and guardianship of allegedly incapacitated persons.  The Legislature has determined that the protection of children is of paramount importance, so much so that it has either limited or abrogated the privilege through statutory enactments.

The People erroneously assert that these exceptions place offenders on notice that the physician-patient privilege does not apply to statements or admissions triggering a duty to disclose.  But it is one thing to allow the introduction of statements or admissions in child protection proceedings, whose aim is the protection of children, and quite another to allow the introduction of those same statements, through a defendant's psychiatrist, at a criminal proceeding, where the People seek to punish the defendant and potentially deprive him of his liberty. Evidentiary standards are necessarily lower in the former

proceedings than in the latter because the interests involved are different.  Thus, the relaxed evidentiary standards in child protection proceedings lend no credence to the People's argument that defendant should have known that any admission of abuse he made to his psychiatrist would not be kept confidential.

The Legislature has not created an express exception permitting a psychiatrist to testify concerning an admission made by a criminal defendant during the course of a professional relationship where the admission was made for purposes of diagnosis and treatment.  Even if a patient is cognizant of his psychiatrist's reporting obligations under child protection statutes, that does not mean that he should have any expectation that statements made during treatment will be used against him in a criminal matter.

Defendant, who was admitted to CPH based upon the diagnoses of depression and suicidal ideation, allegedly made admissions to his psychiatrist for the purpose of treatment.  Thus, defendant's admission was subject to the physician-patient privilege and, absent any waiver or exception (neither of which is present here), its admission in evidence through the testimony of defendant's psychiatrist violated section 4504 (a).

### III.

The People next claim that, even if defendant's admission was privileged, we may nonetheless decline to enforce the privilege if its invocation would undermine section 4504's

policy objectives.  According to the People, enforcement of the physician-patient privilege after a disclosure has been made does not promote the purposes of encouraging communication or protecting privacy but, rather, runs counter to the Legislature's policies and practices that are aimed at preventing child abuse and bringing abusers to justice.

We reject the People's suggestion that we curtail the privilege in this regard.  As stated above, the Legislature has crafted exceptions to the privilege in child protection proceedings in order to advance the important interest in protecting the welfare of children.  Moreover, the cases cited by the People in support of their contention that we may imply from those enactments that the physician-patient privilege was not meant to apply to instances where a disclosure is made are inapposite.  In each of those cases, the Legislature had created a statutory scheme that charged a governmental body with enforcing certain health care laws, and we held that the need for the disclosure of confidential records was implied from the powers that the Legislature conferred on the governmental body (see Matter of New York City Health & Hosps. Corp. v New York State Commn. of Correction, 19 NY3d 239 [2012] [finding an implied exception to the physician-patient privilege from the Legislature's express provisions that granted a commission the power to investigate inmate deaths]; Matter of Camperlengo v Blum, 56 NY2d 251 [1982] [finding an implied exception to the

physician-patient privilege where the State Department of Social Services sought medical records as part of a Medicaid fraud investigation]; <u>People v Fuller</u>, 24 NY2d 292 [1969] [finding an implied exception to the physician-patient privilege under the Narcotics Control Act of 1966 that allowed an arrestee's medical records and statements to physicians in evidence at the addiction hearing to determine if the arrestee qualified for the program, but did <u>not</u> permit the use of such material at the arrestee's criminal case]).

IV.

Finally, contrary to the People's contention, the testimony by defendant's psychiatrist that defendant admitted to the abuse was not harmless.  Apart from the victim's testimony, there was no eyewitness evidence to the abuse, and there was little, if any, physical evidence establishing it.  Moreover, the prosecutor relied on the psychiatrist's testimony in arguing for defendant's guilt and, during deliberations, the jury made one request, namely, it asked for the psychiatrist's response when she was asked if defendant admitted to her that he sexually molested the child.

Accordingly, the order of the Appellate Division should be affirmed.

* * * * * * * * * * * * * * * * *

Order affirmed.  Opinion by Judge Pigott.  Chief Judge Lippman and Judges Read, Rivera, Stein and Fahey concur.  Judge Abdus-Salaam took no part.

Decided May 5, 2015