================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 76
The People &c.,
            Respondent,
        v.
Darrell Spencer,
            Appellant.


            Susan H. Salomon, for appellant.
            Eric C. Washer, for respondent.


DiFIORE, Chief Judge:

        The issue presented on this appeal is whether the trial

court erred, after its inquiry pursuant to People v Buford (69

- 1 -

NY2d 290 [1987]), in failing to discharge a sworn juror who, on the fourth day of deliberations, repeatedly stated that she could not "separate [her] emotions from the case" and "[did not] have it in [her]" to decide the case on the facts and the law. We hold, under the unique circumstances presented here -- where the juror repeatedly and unambiguously responded that she was unable to render an impartial verdict based solely on the evidence and the law -- that the trial court erred in failing to discharge the juror as "grossly unqualified to serve" pursuant to CPL 270.35 (1). Accordingly, defendant is entitled to a new trial and the order of the Appellate Division should be reversed.

I.

Defendant was indicted for intentionally murdering the victim by stabbing her 38 times. On the fourth day of deliberations, juror number one called the court clerk and "asked what she needed to do . . . to get excused." The trial judge conducted an extensive inquiry of the juror in the presence of the attorneys and defendant during which the juror repeatedly stated that she was unable to discharge her duty. The following exchange took place:

> "THE COURT: Could you tell us what's going on?
>
> THE JUROR: I'm not sure that I'm able to separate my emotions from the case so I just wanted to --
>
> THE COURT: Well, I mean, you have to do that. You have to separate your emotions. You're a member of a jury of 12 people. As I said,

this has to be decided.  And you promised that you will be able to do so.  It has to be decided on the evidence and the law as you find it to be.  And I know it's difficult to be a juror but that's, you know -- I mean we've all put a lot of time, a lot of effort, and there's no way that we can go forward without you.

THE JUROR: Well I do understand.  I feel -- I thought I would be able to but it is my duty to let you know that I haven't been able to.

THE COURT: Well, I mean, it's something.  We can't go forward and there's no way we can excuse you.  We can't go forward without you, we just can't.

THE JUROR: So is it just that I make a decision based on my emotions just to get it out of the way?

THE COURT: No, no I wouldn't ask you to make a decision based on your emotions.  I would ask you to do -- look we're all the product of who we are and we bring our life experience to whatever we do. But what you need to do is put aside, to the extent that you can, your emotion and make a decision.
          Speak to your fellow jurors; discuss with your fellow jurors; listen to your fellow jurors; express your own views to your fellow jurors; and then, eventually, come to a decision as to the one issue here. As to whether or not the People have proven Mr. Spencer's guilt beyond a reasonable doubt.  I'm going to have to ask you to really try very hard to do that.

THE JUROR: I honestly have been.  And I don't feel that we can.

THE COURT: We have to continue with the trial.  And, I mean, I can speak to you in the context of all your fellow jurors.  What all of you need to do in terms of sharing. But there's no new jury that's going to be any better [at] doing this than you are."

Despite the court's efforts to impress upon the juror the gravity

of her sworn duty to decide the case on the facts and the law,

the juror did not change her mind.  Again, she stated,

>"THE JUROR: I don't feel like I'm able to. I
>mean I've been trying extremely hard and I
>don't feel that I can without -- I can't
>separate it[,] I thought that I could."

The court continued to exhort the juror to fulfill her solemn

duty; the juror, however, remained resolute that she was unable

to do so:

>"THE COURT: Well, I mean, whatever emotion --
>I mean you can decide the case here based on
>what you heard and saw in this courtroom,
>that's what you need to do.  I mean that's
>what you need to do is to decide the facts as
>you see them and apply the law as I've said
>it to you, to those facts, and do that.  And
>that's your only concern.  If you do that
>you've done your job.
>
>THE JUROR: But that's what I have been trying
>to do and that's why I've come to this
>conclusion that I can't.  I don't have it in
>me.
>
>THE COURT: Well, you have to have it in you,
>that's really what it comes down to.  I don't
>see -- I mean you have to decide.  You swore
>an oath to us to say that you will decide the
>case on the law and the evidence.  And I'm
>going to ask you to really try very hard to
>do that.
>
>THE JUROR: I really did.
>
>THE COURT: Whatever way you feel the evidence
>is, and that's your decision as to the
>evidence, I have nothing to do with that.
>
>THE JUROR: I can't, I can't separate it
>anymore.  I don't know, I don't know.  I
>don't have the capabilities to.  I've been
>trying and I can't.  That's what I'm trying
>to tell you.

THE COURT: I'm going to ask you to think about what I could do, in the context of sending me a note about questions that you have for all the jurors.  In terms of the evidence, or my charge, or the law that can be, in any way, helpful for you surmounting this.

THE JUROR: I don't know what can be helpful.

THE COURT: Well, then, you have to think about it.

THE JUROR: I have.

THE COURT: I understand that.  Look if you think of a position that we're in now -- is everybody here?  I mean this is a significant case and everybody here has a real interest in it being resolved.  Your fellow jurors have an interest in it being resolved; the People of the State have an interest of it being resolved; obviously, Mr. Spencer has an interest of it being resolved, everybody does.  And so I'm going to ask you to really do, you know, to decide the case.  Figure out what you believe the facts are.  And without fear or favor or bias or sympathy, once you decide the facts and apply the law, then you will decide whether or not Mr. Spencer is even guilty or not guilty.

THE JUROR: So I've done all that[,] what do you suggest?

THE COURT: What I suggest is that you go back over it some more with your fellow jurors[,] that's what I suggest.

THE JUROR: I don't know that there's anything else that's going to change my heart, I can't, I don't know.

THE COURT: Well I'm going to ask you to try[,] that's what I'm going to do.  I'm going to ask you to try.  To go back over it with your fellow jurors and to try because that's your job.  And, you know -- and that's, I mean, I want you to keep --

THE JUROR: I feel like I am.  And I don't feel like I can do that[,] that's what I feel.  Like it's not like I came to this conclusion, I stepped in one minute and I came right back out.  I feel like . . . [I'm] giving up my conscience.  I did take an oath to do a certain job that I can't do it[,] I can't.

THE COURT: But you can decide what the facts are can't you?

THE JUROR: Yes.

THE COURT: And once you've done that, once you've decided the facts, then you have to apply the law as I give it to you[,] that you have to do.

THE JUROR: All right.  I mean I'm telling --

THE COURT: I understand what you're saying. But you're capable of deciding, on your own, what the facts are.  And once you do that, . . . then it's your job to apply the law to the facts.  And come to a decision based on the law and the facts and that's what you promised to do.  And the rest of it just has to be put to the side.  So I'm going to ask you to try to do that.  You just wait for one moment."

The court excused the juror from the courtroom and defense counsel moved for a mistrial -- as the alternate jurors had already been dismissed -- arguing that juror number one was "no longer qualified to be a juror in this case."  The prosecutor tried "thinking of anything else that could possibly . . . open her mind" but offered no new approach.  The court brought the jury back into the courtroom and instructed them "to continue to apply the law to the facts . . . without fear or favor or bias or sympathy" and "to return to the jury room and resume your

deliberations."  Juror number one replied, "I have no choice."

Having completed its Buford inquiry, the court speculated "that this juror, at this stage, is the sole hold [out] in this case," and stated "that [juror number one] has determined what the facts are but for whatever reason up to now feels, notwithstanding what she had sworn to do, that she can't say guilty."  The court told defendant to consider the reduced plea offer to manslaughter, as it was the court's "judgment based on what [juror number one] said that she has evaluated that and has decided that you are, in fact, guilty."  Notably, the court, referencing its 45 years of experience, acknowledged the rarity of the juror's state of mind, stating, "I [have] never heard a juror say what this juror said which, essentially I believe is, I decided the facts but I can't do what the law requires me to do."

After the lunch recess, the jury sent out a note that it had reached a verdict.  Defendant was acquitted of murder in the second degree and was convicted of manslaughter in the first degree.  The Appellate Division, with one Justice dissenting, affirmed (135 AD3d 608 [1st Dept 2016]).  The dissenting Justice granted defendant leave to appeal.

## II.

"The constitutional right of a criminal defendant to a fair trial includes . . . the right to an impartial jury" (People v Rodriguez, 71 NY2d 214, 218 [1988]), and there are several safeguards in place to protect that right.  One statutory

safeguard includes "a mechanism for a juror to be dismissed during the trial or during deliberations" (id., citing CPL 270.35).

> Pursuant to CPL 270.35 (1),
>
> "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case . . . the court must discharge such juror. . . . If no alternate juror is available, the court must declare a mistrial."[1]

As explained in People v Buford, a juror is grossly unqualified "only 'when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict'" (69 NY2d at 298 [citation omitted] [emphasis added]).

The "grossly unqualified" standard for the removal of a sworn juror upon a record of an obviously partial state of mind is higher than that required for the removal of a prospective juror (see Buford, 69 NY2d at 298). Pursuant to CPL 270.20, a prospective juror may be excused for cause if the juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b] [emphasis added]) and, therefore, "a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the

---

[1] There was nothing elicited from juror number one as a prospective juror during voir dire to portend that she would be incapable of deciding the case solely on the facts and the law.

juror states unequivocally on the record that he or she can be fair and impartial" (People v Warrington, 28 NY3d 1116, 1119-20 [2016] [internal quotation marks and citations omitted]). Conversely, CPL 270.35 (1) "places a greater burden upon the moving party than if the [prospective] juror was challenged for cause," and the record must convincingly demonstrate that the sworn juror cannot render an impartial verdict for him or her to be disqualified (Buford, 69 NY2d at 298 [citations and quotation marks omitted]).

A "Trial Judge generally is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35, because that Judge is in the best position to assess partiality in an allegedly biased juror" (Rodriguez, 71 NY2d at 219). However, "[w]hether a seated juror is grossly unqualified to serve is a legal determination" (People v Harris, 99 NY2d 202, 212 [2002]).

"[E]ach case must be evaluated on its unique facts to determine whether a particular juror must be disqualified under CPL 270.35" (Buford, 69 NY2d at 299). To that end, the trial court

> "[i]n a probing and tactful inquiry . . . should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case . . . . [and] should carefully consider the juror's answers and demeanor to ascertain whether her state of mind will affect her deliberations" (Buford, 69 NY2d at 299).

We have cautioned that it would be "unnecessary and indeed inappropriate to subject [a] juror to questions relating to her thought processes, the deliberations or other matters that lie within the confines of the jury room" (People v Sanchez, 99 NY2d 622, 623-24 [2003]). Further inquiry was not necessary in this case as the court's inquiry was sufficiently probing to provide an ample record to determine whether the juror at issue was grossly unqualified.

In People v Rodriguez, this Court held that a juror was "grossly unqualified to serve" where the "juror's statements made it plain that she possess[ed] a state of mind which would prevent the rendering of an impartial verdict" (71 NY2d at 221, quoting Buford, 69 NY2d at 298 [internal quotation marks omitted]). Here, juror number one made it plain that she could not render such a verdict even though she did not state that she suffered from any actual bias. We are not conflating a declaration of actual bias with a juror's declaration of being emotional about the case, as a declaration regarding emotions alone does not render a juror grossly unqualified. Moreover, neither the constitutional right to a trial by an impartial jury, nor the controlling statute, nor our case law requires a statement of actual bias for a sworn juror to be grossly unqualified. As the Supreme Court has explained, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it" (Smith v Phillips, 455 US 209, 217 [1982]) -- something this

juror repeatedly informed the court that she was incapable of doing.

Under these circumstances, the record reveals that it was obvious the juror possessed a state of mind preventing her from rendering an impartial verdict and thus, she was "grossly unqualified to serve."  The juror declared forthrightly that she could not separate her emotions from her ability to deliberate and was incapable of fulfilling her sworn duty to reach a verdict based solely on the evidence presented at trial and the law. Compelling the juror to resume deliberations could not cure the fundamental problem with her state of mind.  The trial court's implicit conclusion that the juror did not "possess[] a state of mind which would prevent the rendering of an impartial verdict" (Buford, 69 NY2d at 298 [citation and quotation marks omitted]) was erroneous.[2]

We have recognized that "there are no 'perfect' trials" and "no 'perfect' juries" (People v Arnold, 96 NY2d 358, 362 [2001]).  "While the goal is utter impartiality, each juror

---

[2] Because the trial court's inquiry was extensive and demonstrated the error in failing to discharge juror number one pursuant to the statutory mandate of CPL 270.35 (1), the People's argument regarding defendant's lack of preservation as to whether the trial court's inquiry was "probing and tactful" is irrelevant.  The argument on appeal to this Court -- that the trial court erred in failing to discharge juror number one as no longer qualified to serve -- is clearly preserved; defense counsel immediately moved for a mistrial after the Buford inquiry and argued that the "juror [was] no longer qualified to be a juror in this case."

inevitably brings to the jury room a lifetime of experience that will necessarily inform her assessment of the witnesses and the evidence" (id.).  Emotions are natural human responses and the law does not expect jurors to be devoid of such feelings; however, jurors must have the capacity and the will to decide the case based solely on the facts as they find them and the applicable law as instructed by the court.

Here, as the court acknowledged on the record, the sworn juror at issue -- a juror who the court believed had stated that she could not "do what the law require[d] [her] to do" -- was incapable of rendering an impartial verdict as required by her oath as a sworn juror and, therefore, CPL 270.35 (1) mandated her discharge.

### III.

Regarding defendant's pretrial motion to suppress evidence, we reject defendant's argument that his warrantless arrest violated Payton v New York (445 US 573 [1980]).  There is record support for the determination of the courts below that defendant voluntarily exited his home, whereupon he was arrested (see e.g. People v Minley, 68 NY2d 952 [1986]; People v Reynoso, 2 NY3d 820 [2004]).  As a result, the issue is beyond our further review (see e.g. People v Gilford, 16 NY3d 864, 868 [2011]).

Because the failure to discharge juror number one pursuant to CPL 270.35 (1) mandates a reversal of defendant's conviction and a new trial, we need not address defendant's

remaining contention.

          Accordingly, the order of the Appellate Division should
be reversed and a new trial ordered.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and a new trial ordered.  Opinion by Chief Judge
DiFiore.  Judges Rivera, Stein, Fahey, Garcia and Wilson concur.
Judge Feinman took no part.


Decided June 22, 2017