People v Alger (2022 NY Slip Op 03545)

People v Alger

2022 NY Slip Op 03545

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

111257
[*1]The People of the State of New York, Respondent,
v
Richard Alger, Appellant.

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Bruce Evans Knoll, Albany, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered January 11, 2019, upon a verdict convicting defendant of the crimes of rape in the third degree (two counts), sexual abuse in the first degree, endangering the welfare of a child (two counts), predatory sexual assault against a child, incest in the first degree and course of sexual conduct against a child in the first degree.
In July 2018, based upon his alleged sexual contact with an 11-year-old girl (hereinafter the younger victim) and a 15-year-old girl (hereinafter the older victim), defendant was charged with two counts of rape in the third degree (counts 1 and 2), sexual abuse in the first degree (count 3), two counts of endangering the welfare of a child (counts 4 and 9), promoting a sexual performance by a child (count 5), possession of a sexual performance by a child (count 6), predatory sexual assault against a child (count 7), incest in the first degree (count 8) and course of sexual conduct against a child in the first degree (count 10). Prior to trial, County Court dismissed counts 5 and 6 of the indictment on the ground that the evidence presented to the grand jury was legally insufficient. Defendant was convicted of the remaining eight counts of the indictment following a jury trial. Defendant was thereafter sentenced to various concurrent and consecutive terms of incarceration, resulting in an aggregate prison term of 33 years to life. Defendant appeals.
Defendant argues that the verdict is unsupported by legally sufficient evidence and is also against the weight of the evidence. Defendant's legal sufficiency argument is preserved only to the extent that he argues that there is insufficient evidence that he had sexual intercourse with the victims, as required for his convictions under counts 1, 2, 7, 8 and 10 of the indictment (see People v Taylor, 196 AD3d 851, 851-852 [2021], lvs denied 37 NY3d 1025, 1030 [2021]; compare People v Ackerman, 173 AD3d 1346, 1348 [2019], lv denied 34 NY3d 949 [2019]). Nevertheless, in conducting our weight of the evidence review, we necessarily consider whether the People satisfied their burden of proof for each element of the crimes for which defendant was convicted (see People v Garrand, 189 AD3d 1763, 1763 [2020], lv denied 36 NY3d 1120 [2021]; People v Shackelton, 177 AD3d 1163, 1165 [2019], lv denied 34 NY3d 1162 [2020]). In a weight of the evidence analysis, we first determine whether, based upon all of the credible evidence, a different finding would have been unreasonable and, if not, we then "'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" to determine if the verdict is supported by the weight of the evidence (People v Bleakley, 69 NY2d 490, 495 [1987], quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]; see People v Youngs, 175 AD3d 1604, 1606 [2019]).
As charged in counts [*2]1 and 2 of the indictment, which relate to the older victim, a conviction for rape in the third degree requires proof that the defendant, being 21 years of age or older, engaged in sexual intercourse with someone younger than 17 years old (see Penal Law § 130.25 [2]). As charged in count 3 of the indictment, which relates to the younger victim, a person is guilty of sexual abuse in the first degree when he or she is 21 years of age or older and subjects someone less than 13 years of age to sexual contact (see Penal Law §§ 130.00 [3]; 130.65 [4]). Under counts 4 and 9 of the indictment, relating to the younger victim, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]). As for count 7, regarding the younger victim, a defendant is guilty of predatory sexual assault against a child when the victim is less than 13 years old and the defendant, being 18 years old or more, commits the crime of rape in the first degree or course of sexual conduct against a child in the first degree (see Penal Law § 130.96). Under count 8 of the indictment, regarding the younger victim, a person is guilty of incest in the first degree when, as relevant here, he or she commits the crime of rape in the first degree, as defined in Penal Law § 130.35 (3) or (4), "against a person whom he or she knows to be related to him or her, whether through marriage or not, as an ancestor, descendant, brother or sister of either the whole or half blood, uncle, aunt, nephew or niece" (Penal Law § 255.27). As relevant to counts 7 and 8 of the indictment, a person commits rape in the first degree when he or she is 18 years or older and engages in sexual intercourse with someone less than 13 years old (see Penal Law § 130.35 [4]). Lastly, under count 10 of the indictment, relating to the younger victim, "[a] person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration[,] . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse[,] . . . with a child less than [13] years old" (Penal Law § 130.75 [1] [b]; see also Penal Law § 130.00 [3], [10]).
At trial, both victims testified that defendant took them boating on the Hudson River in July 2017. The older victim asserted that, as she and the younger victim were skinny-dipping, she observed defendant masturbating on the boat. The victims consistently testified that, after swimming, they played truth or dare with defendant and that defendant later put his penis inside the older victim's vagina and digitally penetrated both victims' vaginas. According to the older victim, defendant ejaculated inside and outside of her vagina. The older victim thereafter reported defendant's conduct to law [*3]enforcement and underwent a sexual assault examination at the hospital. The sexual assault nurse examiner who conducted the examination testified as to the older victim's statements during the examination, which included her assertions that defendant penetrated her vagina with his penis and fingers and that defendant had ejaculated. Testimony from two forensic scientists established that cuttings from the jean shorts and underwear worn by the older victim on the day of the boating incident were positive for seminal fluid and that DNA extracted from those cuttings matched defendant.
The older and younger victims testified that they each had separate, additional encounters with defendant. The older victim testified that, sometime after mid-May 2017, but before the July 2017 boating incident, defendant had vaginal sexual intercourse with her in a camper in defendant's backyard. The younger victim testified that, on an evening in November 2017, she asked defendant for a particular dinner food and that defendant responded that it would "cost" her. She stated that, later that night, defendant "came over and took the blankets off me, and my clothes, and then . . . put his penis inside of me." The People presented evidence of the police investigation that established that defendant had a camper and a boat at his home.
Contrary to defendant's contention, we find that the trial evidence amply supported the jury's verdict. The evidence established that the older victim was younger than 17 years old on the two occasions when defendant had vaginal sexual intercourse with her and that the younger victim was younger than 13 years of age when defendant had vaginal sexual intercourse with her and digitally penetrated her vagina. Testimony from both victims established the younger victim's relation to defendant and the older victim's testimony was sufficient to satisfy the statutory corroboration requirement set forth in Penal Law § 255.30 (2) (see People v Vincent, 34 AD2d 705, 707 [1970], affd 27 NY2d 964 [1970]; cf. Matter of Nevada FF., 214 AD2d 814, 815 [1995], lv denied 86 NY2d 703 [1995]). Lastly, testimony from an investigator, together with the victims' testimony as to how defendant was related to the younger victim, established that defendant was well over the age of 21 at the time of his sexual encounters with the victims (compare People v Castro, 286 AD2d 989, 990 [2001], lv denied 97 NY2d 680 [2001]). Accordingly, we are satisfied that the verdict is supported by legally sufficient evidence and that, although a different verdict would not have been unreasonable, it is not against the weight of the evidence (see Penal Law §§ 130.25 [2]; 130.65 [4]; 130.75 [1] [b]; 130.96; 255.27, 260.10 [1]; People v Jabaut, 111 AD3d 1140, 1143 [2013], lv denied 22 NY3d 1139 [2014]).
Defendant also argues that County Court erred in denying his for-cause challenges to prospective jurors Nos. 17, 75 and 109. Pursuant to CPL 270.20 (1) (b), a party may challenge [*4]a prospective juror for cause if the juror "has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial." "If a prospective juror makes statements that raise a serious doubt regarding his or her ability to be impartial, the trial court should conduct a follow-up inquiry regarding the preexisting opinion and must excuse the juror unless he or she states unequivocally on the record that he or she can be fair and impartial" (People v Jackson, 176 AD3d 1312, 1314 [2019] [citations omitted]; see People v Chambers, 97 NY2d 417, 419 [2002]).
Here, although prospective jurors Nos. 17 and 109 disclosed circumstances that could be indicative of bias, they each — upon thorough inquiry — provided unequivocal assurances that they could be fair and impartial. Accordingly, we discern no abuse of discretion in County Court's determination to deny defendant's challenges for cause to prospective jurors Nos. 17 and 109 (see People v Warrington, 28 NY3d 1116, 1120-1121 [2016]; People v Porlier, 55 AD3d 1059, 1061 [2008]). Nor is there any basis to disturb County Court's denial of defendant's for-cause challenge to prospective juror No. 75, as that prospective juror did not make any statements that would raise a serious doubt as to her ability to be impartial or otherwise suggest that she had a state of mind that was likely to preclude her from rendering an impartial verdict (see CPL 270.20 [1] [b]; People v Callicut, 101 AD3d 1256, 1261 [2012], lvs denied 20 NY3d 1096, 1097 [2013]).
Defendant further argues that County Court committed reversible error in dismissing a sworn juror. Pursuant to CPL 270.35 (1), "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case . . ., the court must discharge such juror." A juror is considered grossly unqualified to serve "when it becomes obvious that [he or she] possesses a state of mind which would prevent the rendering of an impartial verdict" (People v Buford, 69 NY2d 290, 298 [1987] [internal quotation marks and citation omitted]; see People v Kuzdzal, 31 NY3d 478, 483 [2018]). "[E]ach case must be evaluated on its unique facts to determine whether a particular juror must be disqualified under CPL 270.35"; thus, in each case, the trial court should, "[i]n a probing and tactful inquiry, . . . evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case" (People v Buford, 69 NY2d at 299; accord People v Spencer, 29 NY3d 302, 310 [2017]). The trial court "is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35," as it "is in the best position to assess partiality in an allegedly biased juror" (People v Rodriguez, 71 NY2d [*5]214, 219 [1988]; see People v Spencer, 29 NY3d at 310).
During the trial, upon seeing the older victim take the witness stand, one of the sworn jurors alerted a court attendant that "he didn't realize the [older victim's] last name and . . . couldn't go through with the trial." Upon learning of the potential issue, County Court removed the remaining jurors from the courtroom and, in the presence of defendant, defense counsel and the prosecutor, conducted a thorough inquiry of the juror at issue.[FN1] During that inquiry, the juror revealed that his daughter and the older victim had been friends and were briefly in a romantic relationship, but that they had not been in contact in "at least a year." The juror stated that the older victim had been to his home and that, although he did not know anything about this particular case, he had knowledge of the older victim's family, mental health history and possible sexual encounters. The juror disclosed that he had formed opinions about the older victim's "life situation," character and credibility, including that she had "been pretty damaged" and that she "sometimes lies." When asked by County Court whether he could erase his opinion of the older victim's credibility, the juror answered, "I don't know how you would do that." The juror went on to state that he did not trust the older victim and that if something were to have gone missing from his daughter's room, he would have suspected the older victim. The juror further stated that the older victim had cheated on his daughter, which had not surprised him because the older victim had "shown a behavior of cheating on previous boyfriends." The juror admitted that, despite County Court's instructions, he had informed the remaining jurors that he knew the older victim.
On several occasions throughout the colloquy, the juror asserted that he could remain fair and impartial, despite his knowledge of the older victim. We, however, agree with County Court that his statements throughout the colloquy demonstrated otherwise. Considering his unfavorable impressions of the older victim's character and credibility and his knowledge of her mental health history and prior sexual conduct, it is clear that the juror possessed a state of mind which would prevent him from rendering an impartial verdict (compare People v Buford, 69 NY2d at 300). Moreover, given that the juror had informed the remaining jurors that he knew the older victim, there was a risk that the other jurors would afford undue weight to any statements he made during deliberations. Accordingly, we discern no abuse of discretion in County Court's determination that the sworn juror was grossly unqualified to serve and that his dismissal was therefore required (see People v Meyer, 78 AD2d 662, 664 [1980]; compare People v Crider, 176 AD3d 1499, 1500-1501 [2019], lv denied 34 NY3d 1157 [2020]).
As for the issue of the initial oath given to the prospective jurors, defendant failed to preserve his [*6]challenge to the manner in which the oath of truthfulness required by CPL 270.15 (1) (a) was administered and, contrary to defendant's contention, the alleged deficiency in the oath's administration does not constitute a mode of proceedings error (see People v Valentin, 183 AD3d 1271, 1272 [2020], lv denied 35 NY3d 1049 [2020]; People v Quintana, 159 AD3d 1122, 1128 [2018], lv denied 31 NY3d 1086 [2018]; People v Mack, 135 AD3d 962, 963-964 [2016], lv denied 27 NY3d 1002 [2016]; People v Chancey, 127 AD3d 1409, 1412 [2015], lv denied 27 NY3d 1199 [2015]). Defendant similarly failed to preserve his challenge to the Sandoval compromise reached by County Court (see People v Jackson, 29 NY3d 18, 22-23 [2017]; People v Persen, 185 AD3d 1288, 1295 [2020], lv denied 36 NY3d 1099 [2021]; People v Quintana, 159 AD3d at 1127-1128). In any event, were we to address the issue, we would not find County Court's Sandoval ruling to be an abuse of discretion (see People v Thomas, 165 AD3d 1636, 1637 [2018], lvs denied 32 NY3d 1129 [2018]; People v Brown, 62 AD3d 1089, 1092-1093 [2009], lvs denied 13 NY3d 742 [2009]).
As for defendant's sentencing challenges, we are unpersuaded that County Court changed defendant's sentence after it commenced, in violation of CPL 430.10. At sentencing, County Court imposed various concurrent and consecutive prison terms, which together amounted to an aggregate prison term of 33 years to life. County Court issued a uniform sentence and commitment form which reflected that aggregate sentence, but, according to the Department of Corrections and Community Supervision (hereinafter DOCCS), did not accurately reflect the court's stated intention that all sentences were to run consecutively unless otherwise stated. By letter, DOCCS notified County Court of the perceived errors in the uniform sentence and commitment form and suggested amendments to the form that, in its view, were necessary to reflect the sentence imposed by the court. Without explanation, DOCCS asserted that the proposed amendments would result in an aggregate term of 37 years, 10 months and 8 days to life in prison.[FN2] County Court adopted the amendments proposed by DOCCS and issued an amended uniform sentence and commitment form, which — notwithstanding DOCCS' miscalculation of 37 years, 10 months and 8 days to life — still reflected an aggregate prison sentence of 33 years to life.[FN3] However, the amendments proposed by DOCCS and adopted by County Court rendered the sentence illegal because, under Penal Law § 70.25 (2) and (2-e), the sentences imposed on counts 3, 4, 7, 8, 9 and 10 cannot run consecutively to each other. Rather, upon application of Penal Law § 70.25 (2) and (2-e), counts 3, 4, 7, 8, 9 and 10, all of which pertain to the younger victim, must run concurrently with each other. Accordingly, the uniform sentence and commitment form must be amended to reflect that the sentences imposed for counts 3, 4, 7, 8, 9 and 10 run concurrently with each other.[FN4] [*7]Upon such amendments, defendant's aggregate prison sentence remains 33 years to life in prison — a sentence that, given the nature and circumstances of the crimes, we do not find to be harsh or excessive (see People v Shackelton, 177 AD3d at 1166; People v Kalina, 149 AD3d 1264, 1267-1268 [2017], lv denied 29 NY3d 1092 [2017]).
Defendant's remaining arguments, including his claim that he received ineffective assistance of counsel and that testimony regarding a certain uncharged crime was improperly admitted, have been examined and found to be lacking in merit (see e.g. People v Kalina, 149 AD3d at 1267; People v Sudler, 75 AD3d 901, 904-905 [2010], lv denied 15 NY3d 956 [2010]).
Lynch, J.P., Aarons, Colangelo and McShan, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the County Court of Washington County for the entry of an amended uniform sentence and commitment form.

Footnotes

Footnote 1: The inquiry was broken up by a lunch break, which allowed the prosecutor and defense counsel to research the issue and prepare their respective arguments on the matter.

Footnote 2: We cannot conceive of any scenario in which the sentences reflected on the amended uniform sentence and commitment form result in an aggregate prison term of 37 years, 10 months and 8 days to life.
Footnote 3: The inmate lookup page on DOCCS' website inaccurately states an aggregate minimum prison sentence of 37 years, 10 months and 8 days. As noted, the amended uniform sentence and commitment form reflects an aggregate minimum prison sentence of 33 years.
Footnote 4: As imposed by County Court, the sentences for counts 1 and 2 of the indictment continue to run consecutively to each other and to all other counts.