People v Gomez (2025 NY Slip Op 06929)

People v Gomez

2025 NY Slip Op 06929

Decided on December 11, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 11, 2025

CR-23-0485
[*1]The People of the State of New York, Respondent,
vJose Omar Aguilar Gomez, Appellant.

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

Theresa M. Suozzi, Saratoga Springs, for appellant.
Jason M. Carusone, District Attorney, Lake George (Robert P. McCarty of counsel), for respondent.

Aarons, J.
Appeal from a judgment of the County Court of Warren County (Robert Smith, J.), rendered February 9, 2023, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child, sexual abuse in the first degree and endangering the welfare of a child.
Based upon allegations that, between January 2019 and January 2022, defendant had sexual contact with a victim (born in 2011), defendant was charged by indictment with predatory sexual assault against a child, sexual abuse in the first degree and endangering the welfare of a child. Midway through the ensuing trial, a sworn juror disclosed that she had met the victim, but County Court denied defendant's motion to discharge the juror. The jury found defendant guilty as charged, and the court sentenced him to a prison term of 25 years to life for his conviction of predatory sexual assault against a child and to lesser concurrent terms of imprisonment for the remaining crimes. Defendant appeals. We affirm.
Defendant contends that his convictions are not supported by legally sufficient evidence and against the weight of the evidence, challenging — essentially — the probative value of the People's DNA evidence and the credibility of the victim's uncorroborated account of defendant's alleged conduct. Defendant did not address his trial motion for dismissal to these issues, rendering his legal sufficiency argument unpreserved (see People v Santana, 179 AD3d 1299, 1300 [3d Dept 2020], lv denied 35 NY3d 973 [2020]; People v Madsen, 168 AD3d 1134, 1135 [3d Dept 2019]). "However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Santana, 179 AD3d at 1300 [internal quotation marks and citations omitted]). To that end, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of . . . course of sexual conduct against a child in the first degree . . . and the victim is less than [13] years old" (Penal Law former § 130.96). "A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration[,] . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than [13] years old" (Penal Law § 130.75 [1] [former (b)]). "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [11] years old" (Penal Law § 130.65 [3]). Finally, as charged here, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old"[*2](Penal Law § 260.10 [1]).
The trial proof revealed that, on January 1, 2022, the victim reported to her mother, the State Police and a sexual assault nurse examiner (hereinafter SANE) that, earlier that same day, defendant made contact with the victim's vagina with his penis. The victim testified that the incident took place at home while the mother was away and the babysitter was not looking (see Penal Law § 130.75 [1] [former (b)]). Indeed, the victim recounted that, outside the view of the mother and the babysitter, defendant touched her anus and vagina with his penis or fingers on numerous occasions, not less than 10 times (see Penal Law § 130.00 [former (1), (2)], [3]). The victim could not state specifically when defendant's conduct began, but she recalled that it started sometime prior to August 2021 when defendant's son was born (see Penal Law §§ 130.96; 260.10 [1]).
The SANE performed a physical examination of the victim, during which the victim reportedly stated that defendant "keeps touching [her] when [her] mother leaves for work," that "[t]oday he touched [her] in [her] private spot" by "put[ting] his private spot into [hers]," and that "[i]t has happened many times." The SANE testified that, in her view, bleeding the victim experienced was unlikely to be related to the victim's menstrual cycle given her young age. The SANE also took swabs of the victim's anus and genitals along with secretions found on the victim's upper thighs, and a urine test returned a positive result for chlamydia. Defendant's physician testified that defendant tested positive for chlamydia in March 2022, and confirmed that chlamydia can cause vaginal discharge and bleeding. The mother affirmed that she had observed blood and a discharge in the victim's underwear prior to the victim's report of defendant's alleged conduct. The mother further testified that she had been defendant's girlfriend for three years until January 2021, maintained an intimate relationship with defendant in November 2021 and December 2021 and tested positive for chlamydia in January 2022.
Notwithstanding the foregoing testimony and evidence, a different verdict would not have been unreasonable (see People v Danielson, 9 NY3d 342, 348 [2007]). No other witness besides the victim observed defendant behaving inappropriately on any occasion, and the DNA evidence collected from the victim could not distinguish between defendant and his male relatives — suggesting the male DNA collected from the victim had transferred from defendant's then-infant son because the victim often played with the son, fed him and changed his clothes and diapers. Further, the victim's school had informed the mother that the victim had a menstrual period five months prior to January 1, 2022, and, at the time, the mother attributed the blood and discharge she observed to that natural cause. Testimony also revealed that the mother was extremely upset with defendant just before the victim disclosed to her defendant's alleged [*3]abuse. The jury, having heard these admissions, chose to credit the testimony of the victim and the People's witnesses. Insofar as the witnesses' "testimony was not inherently unbelievable or incredible as a matter of law and was fully explored during cross-examination, we accord due deference to the jury's credibility determinations" (People v Sweet, 200 AD3d 1315, 1318-1319 [3d Dept 2021], lv denied 38 NY3d 930 [2022]; see People v Karnes, 223 AD3d 1119, 1122 [3d Dept 2024], lv denied 42 NY3d 928 [2024]).
Additionally, viewing the evidence in a neutral light (see People v Mayette, 233 AD3d 1097, 1101 [3d Dept 2024], lv denied 43 NY3d 945 [2025]), the victim's account was corroborated by medical examination notes indicating redness and tenderness in the victim's genital area. Further, in light of the son's age and the locations on the victim's person and underwear where the SANE found male DNA, the jury could infer that the DNA belonged to defendant. Thus, having weighed the relative probative force of conflicting testimony and the relative strength of the inferences to be drawn therefrom, the verdict is supported by the weight of the evidence (see People v Santana, 179 AD3d at 1300; People v Fournier, 137 AD3d 1318, 1320 [3d Dept 2016], lv denied 28 NY3d 929 [2016]).
We reject defendant's contention that County Court abused its discretion in denying his motion to discharge the sworn juror who admitted to having met the victim. Discharge of a sworn juror is required upon a finding, "from facts unknown at the time of the selection of the jury, that [the] juror is grossly unqualified to serve in the case" (CPL 270.35 [1]). The grossly unqualified standard "is satisfied only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict" (People v Buford, 69 NY2d 290, 298 [1987] [internal quotation marks and citation omitted; emphasis added]; accord People v Spencer, 29 NY3d 302, 309 [2017]). Here, the juror revealed that the victim shared classes with the juror's child, and "at one point" lived in the same apartment complex as the juror. During that time, the victim occasionally came over to ask to play with the juror's child, and the victim would greet the juror if she saw the juror at school. Under questioning by the court,[FN1] the juror unequivocally confirmed that she could remain fair and impartial despite these experiences (see People v Crider, 176 AD3d 1499, 1501 [3d Dept 2019], lv denied 34 NY3d 1157 [2020]; People v Rogers, 157 AD3d 1001, 1009-1010 [3d Dept 2018], lv denied 30 NY3d 1119 [2018]). Though the juror indicated that she had sympathy for the victim, she also stated she felt that defendant was still innocent until proven guilty, and "a declaration regarding emotions alone does not render a juror grossly unqualified" (People v Spencer, 29 NY3d at 311). Accordingly, we cannot say that defendant's constitutional right to an impartial jury verdict was compromised (see [*4]People v Kuzdzal, 31 NY3d 478, 483 [2018]; People v Spencer, 29 NY3d at 309).
We next turn to defendant's challenge to County Court's admission of testimony from his physician as to defendant's chlamydia diagnosis and treatment. The parties do not dispute that such testimony would fall within the ambit of the physician-patient privilege, governed by CPLR 4504 (a). That statute provides, in relevant part, that "a person authorized to practice medicine . . . shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity" — that is, "[u]nless the patient waives the privilege" or, as relevant here, a statutory exception to the privilege applies (CPLR 4504 [a]; see People v Rivera, 25 NY3d 256, 261 [2015]). The People assert that the physician's testimony is covered by Public Health Law § 2101 (1), which requires physicians to "immediately give notice of every case of communicable disease required by the [Department of Health] to be reported to it, to the health officer of the local health district where such disease occurs."[FN2] Significantly, however, "the physician-patient privilege is to be given a broad and liberal construction to carry out its policy," while "statutes limiting the privilege" have been "narrowly construed" (People v Sinski, 88 NY2d 487, 492 [1996] [internal quotation marks and citations omitted]; see People v Rivera, 25 NY3d at 263). Applying these principles, the limited reporting obligation imposed upon physicians by Public Health Law § 2101 (1) does not abrogate the privilege in a criminal proceeding against the patient (cf. People v Rivera, 25 NY3d at 260-261; compare Thomas v Morris, 286 NY 266, 269 [1941]; but see People v Isidore, 170 AD3d 1637, 1638 [4th Dept 2019] [medical records obtained by court order properly received into evidence], lv denied 34 NY3d 933 [2019]).[FN3] Accordingly, defendant's objection to the physician's testimony about his chlamydia diagnosis should have been sustained.
That said, this nonconstitutional error was harmless. Even absent the physician's testimony, the close-in-time chlamydia diagnoses of the victim and mother, together with the other trial evidence, was enough to permit the jury to infer beyond a reasonable doubt that defendant had sexual contact with the victim. Thus, "the evidence of the defendant's guilt, without reference to the physician's challenged testimony, was overwhelming, and there is no reasonable probability that the error might have contributed to the defendant's conviction" (People v Moghaddam, 56 AD3d 801, 802 [2d Dept 2008], lv denied 16 NY3d 897 [2011]; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Contrary to defendant's view, counsel's failure to move for a mistrial in connection with the juror's admission to having met the victim is not such an egregious and prejudicial error as to warrant reversal on its own; defendant [*5]has not ruled out a legitimate strategic explanation for that omission (see People v Cole, 217 AD3d 1185, 1187-1188 [3d Dept 2023]; People v Capers, 129 AD3d 1313, 1318 [3d Dept 2015], lv denied 27 NY3d 994 [2016]). Defendant further contends that he was denied the effective assistance of counsel when counsel failed to present any witnesses, denied his request to testify on his own behalf and failed to seek a pretrial hearing or take other action to block disclosure of information pertaining to his chlamydia diagnosis. Counsel's performance must be assessed in its totality, and defendant's various grounds for relief constitute a single unified claim of ineffective assistance (see People v Cummings, 16 NY3d 784, 785 [2011], cert denied 565 US 862 [2011]; People v Taylor, 156 AD3d 86, 92 [3d Dept 2017], lv denied 30 NY3d 1120 [2018]). Because defendant's contentions involve matters within and outside the trial record, they are better suited for review in the context of a CPL article 440 motion (see People v Taylor, 156 AD3d at 92).
Finally, we turn to defendant's aggregate sentence of 25 years to life in prison, the statutory maximum for the top count of predatory sexual assault against a child. Defendant observes that his sentence exceeds the People's twice-extended offer of a flat 15 years in prison, to be followed by 20 years postrelease supervision, in exchange for his guilty plea to one count of first-degree course of sexual conduct against a child (see Penal Law § 130.75). "[D]efendant's contention that County Court sentenced him in a manner that penalized him for exercising his right to a jury trial is unpreserved given his failure to object at sentencing to the disparity between the pretrial plea offer and the sentence imposed by the court" (People v Burdo, 210 AD3d 1306, 1311 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 1077 [2023]). That said, we exercise our discretion, in the interest of justice, to reduce the prison sentence on the top count of predatory sexual assault against a child to 20 years to life (see CPL 470.15 [6] [b]). As to defendant's remaining contentions, to the extent they are not covered by the reasoning above, we have reviewed them and conclude that they are without merit.
Garry, P.J., Clark, Lynch and Powers, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentence for predatory sexual assault against a child to a minimum prison term of 20 years and a maximum of life in prison; and, as so modified, affirmed.

Footnotes

Footnote 1: Defendant's contention that County Court failed to conduct a tactful and probing inquiry of the juror is unpreserved for appellate review, "as he failed to object to County Court's procedure in questioning the juror[ ]" (People v Williams, 234 AD3d 1180, 1183 [3d Dept 2025], lv denied 43 NY3d 966 [2025]; see People v Hicks, 6 NY3d 737, 739 [2005]). Defendant did not move for a mistrial, and, to the extent defendant asserts the court should have sua sponte declared a mistrial based upon the juror's disclosure and defendant's objection to the juror (see CPL 280.10 [3]), the trial court is in the best position to assess whether such relief is "manifestly necessary" (People v Michael, 48 NY2d 1, 9 [1979]; see People v Wilson, 163 AD3d 1049, 1052 [3d Dept 2018]). According due deference to the court's determination, the continuation of the trial was not an improvident exercise of discretion.

Footnote 2: Chlamydia is a reportable communicable disease (see 10 NYCRR 2.1 [a]), which various witnesses confirmed is transmissible by sexual contact.
Footnote 3: Similarly unavailing is the People's resort to Public Health Law § 2306, providing for confidentiality of public health records of a patient's reportable sexually transmitted disease diagnoses; the physician's testimony was not a report or information "secured by a board of health or health officer" obtained by court order.